■ BRUNO BRUNI, Plaintiff, v COUNTY OF OTSEGO, Defendant, and CITY OF ONEONTA, Respondent, and MONTGOMERY-OTSEGO-SCHOHARIE SOLID WASTE AUTHORITY, Appellant. [596 NYS2d 888] —Levine, J. Appeal from an order of the Supreme Court (Ingraham, J.), entered June 17, 1992 in Otsego County, which denied a motion by defendant Montgomery-Otsego-Schoharie Solid Waste Authority for summary judgment dismissing the cross claim of defendant City of Oneonta against it.

Defendant City of Oneonta constructed a solid waste facility known as the Southern Transfer Station (hereinafter the transfer station) pursuant to a Municipal Cooperation Agreement (hereinafter the municipal agreement) with defendant County of Otsego in December 1987. The municipal agreement provided for the City to construct the transfer station and operate it for a period of three years and then sell it to the County. Prior to the conveyance of the transfer station to the County, however, the County became part of defendant Montgomery-Otsego-Schoharie Solid Waste Management Authority

(hereinafter the Authority) *(see,* Public Authorities Law, art 8, tit 13-AA, § 2041 *et seq.).* The County, City and Authority thereafter entered into a Facilities Acquisition Agreement (hereinafter the facilities agreement) in September 1990 which, *inter alia,* conveyed the transfer station to the Authority, canceled the prior municipal agreement, and provided in section 7.5 that current employees of the transfer station "shall be offered employment in comparable positions or other employment with the Authority *under terms and conditions of employment as determined by the Authority"* (emphasis supplied). Section 16.1 of the facilities agreement contained a merger clause providing that it embodied "the entire understanding between the parties".

Plaintiff was an employee of the City Engineering Department assigned to the transfer station; when it was transferred to the Authority in September 1990, he accepted the Authority's offer to become Solid Waste Manager and Recycling Coordinator of the transfer station as an employee of the Authority.

Plaintiff thereafter commenced a CPLR article 78 proceeding against the Authority and its Executive Director, demanding that the Authority "put [him] on their books of employment at the pay and benefit level [he] enjoyed while an employee of the City" and to restore all benefits lost in the transfer from City to Authority employment. Plaintiff claimed, based on the municipal and facilities agreements and purported antecedent oral promises, that the City, County and Authority had made assurances that the Authority would give transfer station employees the same as, or better wages and benefits than, they had been receiving from the City.

Supreme Court dismissed the petition, concluding that plaintiff had no viable cause of action against the Authority or its Executive Director for breach of the municipal agreement, in which neither defendant was a contracting party. Additionally, the court determined that plaintiff did not have a viable cause of action against the Authority or its Executive Director based on the facilities agreement which the court found was unambiguous in giving the Authority discretion to determine the terms and conditions of employment for transferred employees. Supreme Court refused to consider the extrinsic or parol evidence plaintiff attempted to admit to contradict the written agreements. No appeal was taken from that dismissal.

Thereafter, plaintiff commenced the instant breach of contract action against the County, City and Authority based on

both the municipal and facilities agreements. The City cross-claimed against the Authority alleging that the Authority (1) breached article VII, § 7.5 of the facilities agreement and parol understandings related thereto, and (2) is obligated pursuant to article VII, § 7.1 of the facilities agreement to indemnify the City for liability on plaintiff's claims arising out of the Authority's breach of that agreement.*

The Authority then moved for summary judgment to dismiss plaintiff's complaint against it based on the dismissal with prejudice of plaintiff's petition against it in the prior CPLR article 78 proceeding, and moved for summary judgment dismissing the City's cross claims.

Supreme Court granted the Authority's motion to dismiss plaintiff's complaint against it based on the prior order dismissing plaintiff's petition involving the identical claims against the Authority. However, the court denied the Authority's motion to dismiss the City's cross claim against it, determining that (1) the City was not a party to the article 78 proceeding and is not bound by the resulting dismissal, and (2) the facilities agreement is ambiguous and "must be developed at trial" to determine the viability of the City's cross claim against the Authority in the event the City is held responsible to plaintiff for damages. The Authority now appeals from Supreme Court's denial of its motion to dismiss the City's cross claim against it.

As an initial matter, we agree with the City's arguments on appeal that neither res judicata, collateral estoppel nor the principle of law of the case binds it to the prior dismissal of plaintiff's article 78 petition because the City was not a party to that proceeding, did not have a full and fair opportunity in that proceeding to litigate the issues presented herein, and the issue of the Authority's duty to indemnify the City was not involved in that proceeding *(see, D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d 659, 664; Siegel, NY Prac § 276, at 406; § 442 *et seq.;* § 457 *et seq.* [2d ed]). The issues presented are whether the City has raised questions of fact, sufficient to defeat summary judgment, regarding the Authority's breach of the facilities agreement and duty to indemnify the City under that agreement.

It is, of course, a question of law for the courts to resolve whether the contract provisions are ambiguous *(see, W. W. W. Assocs. v Giancontieri,* 77 NY2d 157, 162). As previously

---

* The County also cross-claimed against the Authority; that cross-claim, however, is not before our Court on this appeal.

quoted, section 7.5 of article VII of the facilities agreement unambiguously requires the Authority only to offer "comparable positions or other employment" to transfer station employees, and reposes in the Authority the discretion to determine the "terms and conditions" of that employment. The facilities agreement also contains an explicit and unambiguous merger clause (§ 16.1) which bars consideration of prior negotiations or promises outside the agreement. Section 7.5 of the facilities agreement cannot be interpreted as an undertaking by the Authority to maintain City employees in the identical positions they held prior to the transfer, or at the same rate of pay or benefits. The City's attempt, in its cross claim against the Authority, to rely on oral agreements and understandings purportedly made outside the facilities agreement pertaining to the meaning of section 7.5 is unavailing because when parties set down their agreement in a clear and complete document, parol or extrinsic evidence is not admissible to create an ambiguity in or vary the terms of a written agreement which is unambiguous on its face (see, *W.W.W. Assocs. v Giancontieri, supra,* at 162-163; *Intercontinental Planning v Daystrom, Inc.,* 24 NY2d 372, 379), especially where, as here, the written agreement includes an unambiguous merger clause (see, *Fogelson v Rackfay Constr. Co.,* 300 NY 334, 340; *Bobrow & Co. v Loft Realty Co.,* 178 AD2d 175). Indeed, "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" *(W.W.W. Assocs. v Giancontieri, supra,* at 162; *see, Mercury Bay Boating Club v San Diego Yacht Club,* 76 NY2d 256, 269-270).

Furthermore, the indemnity provision in the facilities agreement (§ 7.1), relied upon by the City in its cross claim against the Authority, does not impose a duty by the Authority to indemnify the City in this action. Section 7.1 of the facilities agreement requires the Authority to indemnify the City for liability incurred only when due to: "(1) the untruth, inaccuracy or breach of any representation, warranty, agreement or covenant of the Authority contained in or made pursuant to this Agreement; (2) the assertion against the County and the City of any liability of the County or the City assumed by the Authority under Section 2.4 hereof". The only "untruth, inaccuracy or breach" by the Authority claimed by the City is the alleged breach of section 7.5 of the facilities agreement, which we have already rejected as a matter of law. Moreover, the Authority did not, under section 2.4 of the facilities agreement, assume any liability of the City related to plaintiff's

employment. Consequently, the City has failed to sustain its burden of demonstrating any factual question regarding the Authority's duty to indemnify it under the agreement. Accordingly, the Authority's motion for summary judgment dismissing the City's cross claim against it should be granted.

Weiss, P. J., Mikoll, Mercure and Mahoney, JJ., concur. Ordered that the order is modified, on the law, with costs to defendant Montgomery-Otsego-Schoharie Solid Waste Authority, by reversing so much thereof as denied defendant Montgomery-Otsego-Schoharie Solid Waste Authority's motion for summary judgment dismissing defendant City of Oneonta's cross claim against it; motion granted to that extent, summary judgment awarded to defendant Montgomery-Otsego-Schoharie Solid Waste Authority's and defendant City of Oneonta's cross claim against it is dismissed; and, as so modified, affirmed.