King, J.
This case involves four lease agreements. The leases were entered into between separate but related corporations that operate restaurants under the name Pizzeria Uno (collectively, Pizzeria Uno), and four separate but affiliated partnerships who own the leased premises in four different shopping malls (the partnerships). Pizzeria Uno brought suit alleging breach of contract (count I), fraud and deceit (count II), G.L.c. 93A violations (count III), negligent misrepresentation (count IV), violations of the criminal usury statute (count V), and breach of the covenant of good faith and fair dealing (count VII). They also seek an accounting of common area maintenance charges (count VIII), declaratory relief (count VI) and injunctive relief (count IX). The partnerships now move for partial summary judgment. After a hearing on the motion, the partnerships’ motion is allowed in part and denied in part.
BACKGROUND
The Leases
The material facts set forth below are not disputed. On November 1, 1985, Pyramid Crossgates Company, as Landlord, and Pizzeria Uno of Albany, Inc., as Tenant, entered into a lease for the operation of a restaurant at Crossgates Mall in Albany, New York (the Crossgates Lease).
On May 18, 1988, Pyramid Company of Buffalo, as Landlord, and Uno Restaurants, Inc., as Tenant, entered into a lease for the operation of a restaurant at Walden Galleria Mall in Buffalo, New York (the Walden Lease).
On March 21, 1989, Independence Mall Group, as Landlord, and Pizzeria Uno of Kingston, Inc., as Tenant, entered into a lease for the operation of a restaurant at Independence Mall in Kingston, Massachusetts (the Independence Lease).
On May 16, 1989, Pyramid Company of Onondaga, as Landlord, and Pizzeria Uno of Syracuse, Inc. as Tenant, entered into a lease for the operation of a restaurant at Carousel Center in Syracuse, New York (the Carousel Lease).
Each Lease contains a clause stating that upon the opening of either a fourth (for Independence) or fifth (for each of the other leases) department store in excess of 60,000 square feet the fixed annual minimum rent would be increased by ten percent (10%). See section 3.01(c) in the Crossgates Lease; 3.01(d) in all other leases.
The Department Store Issue
Plaintiffs contend that prior to the execution of the Leases representatives of the Partnerships made a series of oral statements regarding: (1) the reasons, need and impact of the ten percent rent increases upon opening of additional department stores; (2) whether all Tenants would be required to pay similar rent increases; (3) the quality of the stores that Landlords would lease to and whether these stores would be capable of anchoring a high quality regional mall. In addition, plaintiffs claim that the Partnerships misrepresented the space available for use as department stores in each of the Shopping Centers. Finally, plaintiffs allege that two of the partnerships fraudulently induced them to enter into lease modifications where plaintiffs explicitly waived the very claims that they are now asserting.
*242 Each of the Leases contains the following provision under the heading “Complete Agreement”:
This Lease contains and embraces the entire agreement between the parties hereto with respect to the matters contained herein, and it or any part of it may not be changed, altered, modified, limited, terminated, or extended orally or by any agreement between the parties unless such agreement is in writing and signed by the parties hereto, their legal -representatives, successors or assigns. Tenant acknowledges and agrees that neither Landlord nor any representative of Landlord nor any broker “has made any representation to or agreement with Tenant relating to the Premises, this Lease or the Shopping Center which is not contained in the express terms of this Lease. Tenant acknowledges and agrees that Tenant’s execution and delivery of this Lease is based upon Tenant’s independent investigation and analysis of the business potential and expenses represented by this Lease, and Tenant hereby expressly waives any and all claims or defenses by Tenant against the enforcement of this Lease which are based upon allegations of representations, projections, estimates, understandings or agreements by Landlord or Landlord’s representative that are not contained in the express terms of this Lease.
Crossgates Lease, Section 23.13; and with minor immaterial alterations all other Leases, Section 23.16 (emphasis supplied).
Schematic drawings for the Crossgates, Independence and Walden Malls are attached to their respective Leases and state on their face: “The depiction hereon does not constitute a warranty or representation of any kind.”
Walden Galleria mall had four Department Stores already in place and operating at the time Uno opened for business in Walden Galleria: Bonwit Teller, Kaufman’s, Sears and J.C. Penney. On August 9, 1990, Pyramid Company of Buffalo notified the Tenant under the Walden Lease of an increase in minimum rent pursuant to paragraph 3.01(d.) due to the opening of A, M&A, a fifth Department Store at Walden Galleria. On October 25, 1991, a similar notice was sent by Pyramid Company of Buffalo based on the opening of a sixth and seventh Department Store, Lechmere and Lord & Taylor, respectively.
Carousel Center had five Department Stores in place and operating at the time Uno opened for business at Carousel Center; J.C. Penney, Bonwit Teller, Chappells, Hills and Steinbachs. On November 16, 1990, Pyramid Company of Onondaga notified the Tenant under the Carousel Lease of an increase in minimum rent pursuant to paragraph 3.01(d) due to the opening of Kaufman’s, a sixth Department Store at Carousel Center Mall. On August 10, 1991 and November 1, 1994, similar notices were sent by Pyramid Company of Onondaga based on the opening of a seventh and eighth Department Store, Lechmere and Lord & Taylor, respectively.
Independence Mall had three Department Stores already in place and operating at the time Uno opened for business in Independence Mall: J.C. Penney, Sears and Filenes. In November 1990, Independence Mall Group executed an increase in minimum rent pursuant to paragraph 3.01(d) of the Independence Lease due to the opening of Bradlees, a fourth Department Store at Independence Mall.[1]
Crossgates Mall had four Department Stores already in place and operating at the time Uno opened for business at Crossgates Mall: J.C. Penney, Caldor, Jordan Marsh and Filenes. On October 31, 1994, Pyramid Crossgates Company notified the Tenant under the Crossgates Lease of an increase in minimum rent pursuant to paragraph 3.01(c) due to the opening of Lord & Taylor, a fifth Department Store at Crossgates Mall.
Pizzeria Uno did not pay the Department Store increases after receiving notice of the rent increase under the Walden and Carousel Leases. At that time, Pizzeria Uno disputed whether the stores on which the Partnerships based the increase qualified as “department stores” within the meaning of the Lease.
The Lease Modifications
In response to the dispute relating to the Department Store increases, the parties entered into lease modifications for the Walden Lease and the Carousel Lease (the lease modifications).
In the lease modifications, the Buffalo and Syracuse Landlords agreed to defer collection of the Department Store increases for a period from March 1, 1992, through December 31, 1993, by amending Section 3.01(d) to set the base minimum rent at six Department Stores instead of five (with a time period of October 15, 1991 to October 15, 1992 for the Carousel Lease). This period was called the “Department Store Deferral Period.” In exchange, the Tenant “acknowledge! d] and agree! d]” that as of the date the lease modifications were signed, “Tenant owes Landlord an amount equal to” the value of Department Store increases that the Landlord had deferred based on the opening of AM&A, Lechmere and Lord & Taylor at Walden Galleria and the opening of Kaufman’s, Lechmere and Lord & Taylor at Carousel Center. The lease modifications provide that “Upon the expiration of the Department Store Deferral Period, Tenant’s Fixed Annual Minimum Rent schedule then in effect shall be reinstated as set forth in Section 3.01 of the Lease, as if the Lease had never been amended or altered by the terms of this Agreement.” (Emphasis supplied.) In addition to specifically agreeing that (1) the Department Store increases previously billed were in fact owed by plaintiffs, and (2) plaintiffs would pay the Department Store increases at the end of the Deferral Period, the Tenants specifically agreed that if the Tenant ever defaulted on the terms of the lease *243 modifications, “the unpaid amounts deferred herein shall become immediately due and payable.”
In the lease modifications, executed after notice of the Department Store increases, the tenants certified to the landlord “(b) that they do not know of any default by Landlord of the Lease; and (c) that there are no existing setoffs, counterclaims, or defenses against the Landlord to the enforcement of the provisions of the Lease.”
As in the leases themselves, the lease modifications contain provisions that they are integrated documents containing the entire agreement between the parties and may not be modified, amended or extended except in writing signed by the parties.
The Common Area Maintenance Cost Claim
Each lease contains a provision by which the Tenant agrees to pay its allocable share of “Operating Costs” for the shopping centers. Operating costs are defined, in relevant part, as “the total costs and expenses incurred in operating, managing and maintaining the Shopping Center and the Common areas . . .” The Landlord, following the close of each Lease Year, provides the Tenants with “a statement, certified by Landlord, showing the total Operating Costs for the Lease Year” then ending. The Independence, Walden, and Carousel Leases contain the following identical provision; “The Operating Costs described in the Article 7 shall be subject to audit by Tenants for a period of two (2) Lease Years after the Lease Year in question, after which time Landlord’s statement shall be final and conclusive.” (Emphasis supplied.) No similar limitation provision is contained in the Crossgates Lease.
Certified statements of Operating Costs were sent to tenants each year as required by the Leases. Prior to the filing of this complaint, the tenants made no request to audit the statements of Operating Costs except for one possible oral request in 1993.
The Usury Claim
The Leases contain a provision that if plaintiffs fail to make timely rental payments, they agree to a charge of two percent per month “or the maximum rate then permitted by law," for the outstanding balance, plus an additional processing fee of fifty dollars ($50) to one hundred dollars ($ 100), depending on when during the Lease the default occurs. (Crossgates Lease, Section 3.05; all other Leases Sections 3.08.) The Leases also contain a provision that if any term of the Lease is invalidated, all other provisions shall not be affected and “each term and provision of [the] Lease shall be valid and be enforced to the fullest extent permitted by law.” (Crossgates Section 23.17; all other Leases Section 23.20.)
All of the Leases contain a provision stating that “[t]his Lease shall be construed in accordance with the laws of the state in which the Premises is located.” (Crossgates Lease, Section 23.11; all other Leases, Section 23.14.)
Pizzeria Uno has not paid a late charge at any of the locations.
The Tax “Concealment” Allegations
The Carousel Lease provides that Pizzeria Uno of Syracuse is responsible for payment of its allocable share of real property taxes for the Carousel Center Mall. The formula by which the tenant’s share of the real property tax is calculated is set forth in section 23.03(b) of the Lease. The Lease provides that tenant shall pay an estimated amount to Landlord to cover tenant’s anticipated share of real property taxes, subject to reconciliation by the landlord based upon the final tax bill and any adjustments to that bill made by the taxing authorities. The Lease also provides that “a copy of a tax bill or assessment bill submitted by Landlord to Tenant shall at all times be sufficient evidence of the amount of Real Property Taxes to which such bill relates.”
On December 14, 1993, Pyramid Company of Onondaga forwarded a reconciliation statement to Pizzeria Uno of Syracuse indicating that its allocable share of the payment in lieu of taxes for the years 1991, 1992 and 1993 were $34,595.06 in excess of its prior estimated tax payments.
Pizzeria Uno does not deny that the allocable share calculations are correct or that Pizzeria Uno of Syracuse owes that amount pursuant to the terms of the Carousel Lease. Pizzeria Uno only complains about the timing of the reconciliation statement and the Landlord’s motivation in not notifying the Tenant sooner of the charges.
DISCUSSION
Summary judgment shall be granted where (1) there are no material facts in dispute and (2) the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating these elements. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment, who does not have the burden of proof at trial, may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed *244 facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. The Integration Clause
In its complaint, Pizzeria Uno claims that it relied on three representations extrinsic to the Leases, and that those representations fraudulently induced them to enter the Leases. The three alleged representations are that: (1) the ten percent rent department store increases would be used to offer financial incentives to' “department stores” if they agreed to join the malls; (2) specific locations in the malls delineated for single department stores would be used solely for single department stores; and (3) the partnerships would require all mall tenants to agree to pay additional rent upon the opening of a specified number of “department stores.”
There is no dispute that each Lease contains a comprehensive integration clause.[2] Under both Massachusetts and New York law[3] it is well established that the court may not consider alleged agreements reached before or contemporaneously with the execution of an integrated writing. See e.g. McMartin v. Westlake, 36 Mass.App.Ct. 221, 230-33 (1994), and cases cited; Stroll v. Epstein, 818 F.Sup. 640, 645-46 (S.D.N.Y.), aff’d, 9 F.3d 1537 (2nd Cir. 1993); Bruni v. County of Otsego, 596 N.Y.S.2d 888, 890, 891 (App.Div. 1993). That rule does not apply, however, when the complaining party alleges fraud in the inducement. McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 711 & n.5 (1990), Restatement (Second) Contracts §214 (1981).
Nevertheless, in the present case, the allegedly fraudulent statements relied on by the complaining parties are not actionable because there could be no reasonable reliance on what the plaintiffs claim was told to them. See, Westlake, supra, at 233 n. 13; Greenery Rehabilitation Group, Inc. v. Antaramian, 36 Mass.App.Ct. 73, 76 (1994); Elias Bros. Restaurants v. Acorn Enterprises, 831 F.Supp. 920, 922 (D.Mass. 1993), citing Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982); Saxon Theater Corp. of Boston v. Sage, 347 Mass. 662, 666-67 (1964) (requiring that reliance be reasonable); Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993), cert. denied, 114 S.Ct. 1056 (1994) (same); see also, Lugosch v. Merowitz, C.A. Nos. 93-1709-F, 92-3948-B, 2 Mass. L. Rptr. 513 (Suffolk, Sept. 8, 1994) (in action involving an integration clause identical to the one in the instant case, reliance on alleged misrepresentations were held not reasonable as a matter of law).
The plaintiffs in this case are sophisticated business people who were represented by counsel when presented with the Leases for execution. The language of the integration clause in each of the Leases states clearly that Pizzeria Uno “expressly waives any and all claims or defenses . . . against the enforcement of this Lease which are based upon allegations of representations, projections, estimates, understandings or agreements by Landlord or Landlord’s representative that are not contained in the express terms of this Lease.” In addition, the Leases provide that the ten percent fixed rent increases would be triggered “upon the opening for business of the fifth [or fourth in the Kingston Lease] department store in excess of 60,000 s.f.” According to the plain meaning of the integration clause, Pizzeria Uno could rely on the “department store” rent increase clause alone to ascertain when it would be obligated to pay the increases. Pizzeria Uno’s argument that it relied on the three alleged representations is simply not tenable in the face of the above integration clause.
Moreover, regardless of the existence of the integration clause, Pizzeria Uno’s reliance on the alleged representations was not reasonable. For example, in support of its allegation that the partnerships were engaged in a “fraudulent scheme to raise rent” Pizzeria Uno claims that the partnerships showed them schematic plans for the malls that depicted a limited number of locations for department stores capable of triggering the ten percent rent increases. Each of the schematic plans states, in prominently placed bold type:
NOTE: This is a schematic plan and is intended to only show the proposed general layout of the Shopping Center. All measures, distances and parcel dimensions sire approximate and not to scale. The depictions hereon does (sic) not constitute a warranty or representation of any kind.
The plans make no assurances that the relatively large store areas depicted thereon would never be subdivided into smaller areas that could trigger the ten percent increase clause.
Pizzeria Uno’s reliance on the alleged promises to use the increases as incentives, and to require all mall tenants to pay the increases is also unreasonable. While it might make sense for Pizzeria Uno to rely on the partnerships’ promise to attract “department stores” generally, the promises alleged here simply do not sound like the kind of promises a sophisticated tenant would rely on without including them within the lease.
As a matter of law, Pizzeria Uno’s reliance on the three alleged representations was not reasonable and cannot pierce the language of the integrated agreement. Therefore, to the extent that the plaintiffs’ claims are based on these extrinsic agreements, the claims cannot survive summary judgment. Accordingly, the plaintiffs’ fraud claim (count II), negligent misrepresentation claim (count IV), the derivative claims for breach of the covenant of good faith and fair dealing (count VII) and so much of the chapter 93A claim (count III) that relies on extrinsic agreements, are dismissed.[4]
*245 II.The Lease Modifications
The partnerships concede that a dispute of material fact remains concerning the meaning of the term “department store” as used in section 3.01(d) (section 3.01(c) in the Crossgates Lease) of the Leases. Although the partnerships do not seek summary judgment on the entire breach of contract claim, they do contend that a portion of the breach of contract claim is barred by the two lease modification agreements. See “Reply Memorandum in Support of Defendants’ Motion for Partial Summary Judgment” at 1 -4 and n. 2.
The Carousel and Walden Lease modifications, both of which were entered into on July 23, 1992, state that the “Tenant certifies to Landlord . . . (b) that they do not know of any default by Landlord of the conditions of the Lease; and (c) that there are no existing setoffs, counterclaims, or defenses against the Landlord to the enforcement of the provisions of the Lease.” The lease modifications effectively settled all of the plaintiffs’ claims with respect to the Carousel and Walden Leases as of July 23, 1992. Although the modifications were temporary, and have now expired and yielded to the terms in the original Leases, there can be no dispute that as of July 23, 1992 the plaintiffs waived any defenses they may have had against the partnerships to the enforcement of the two leases as to any claims existing up to July 23, 1992.
Accordingly, as to the Carousel and Walden Leases, the plaintiffs may only proceed on those claims that arose after the modification agreements were executed.
III.The Common Area Maintenance Charges
Pizzeria Uno claims that the partnerships, in breach of the Lease agreements, inflated common area maintenance charges at the four malls. The Independence, Walden, and Carousel Leases state that “the Operating Costs described in Article 7 shall be subject to audit by Tenants for a period of two (2) Lease Years after the Lease Year in question, after which time Landlord’s statement shall be final and conclusive.”
Under both Massachusetts and New York law, parties may agree to contract provisions that shorten the period of limitations provided that it does not contravene public policy to do so. Hays v. Mobil Oil Corp., 930 F.2d 96 (1st Cir. 1991); H.P.S. Cap., Inc. v. Mobil Oil Corp., 588 N.Y.S.2d 29, 30 (App.Div. 1992). The parties in this case agreed, in substance, that if Pizzeria Uno did not request an audit within two years of the accrual of operating costs for a particular lease year, its right to dispute the charges would be waived.
Pizzeria Uno argues that the partnerships fraudulently concealed their deceptive billing practices, and that the discovery rule should toll the running of any contractual limitations period until the time it discovered the fraud. The only support in the summary judgment record for Pizzeria Uno’s position on the discovery rule issue is contained in the affidavit of Charles B. Rich. Mr. Rich states that at some unspecified time in 1993, he had a telephone conversation “with a Pyramid representative” in which he requested an audit for all four malls, and that his request was denied. Mr. Rich does not identify the person he spoke with or even where the person was when the communication took place. Because the limitation period in the Leases is enforceable, the affidavit, at best, raises an issue of fact only with respect to the common area maintenance claims for the period after 1990. Since Pizzeria Uno’s allegations of fraudulent concealment prior to the alleged phone call by Mr. Rich are wholly unsupported, the partnerships are entitled to summary judgment on Pizzeria Uno’s common area maintenance claim involving the Independence, Walden and Carousel Leases for the period prior to 1991.
IV.The Usury Interest Claim
Pizzeria Uno claims that the partnerships collected and attempted to collect late charges which exceed the legal limit as established under the Massachusetts criminal usury statute, G.L.c. 271, §49. The “delinquent payment” provisions of the Leases provide for “interest at the monthly rate of two percent (2%) per month or the maximum rate then permitted by law, whichever is less" (emphasis added). While the two percent per month is in excess of the interest allowable under G.L.c. 271, §49, the court concludes that because of the qualifying language of the “delinquent payment” clause, Pizzeria Uno’s usury interest claim must be dismissed. The partnerships are entitled to enforcement of the “delinquent payment” clause insofar as the interest charged is lawful.
V.The Carousel Lease Property Tax Issue
Pizzeria Uno claims that for nearly three years, the partnerships fraudulently concealed property tax bills and water and sewer assessments owing on the Carousel Lease. Pizzeria Uno cites Compton Advertising, Inc. v. Madison-59th Street Corp., and Collins-Tuttle & Co., Inc., 398 N.Y.S.2d 607, 612 (1977), for the proposition that the landlord’s three-year delay in billing results in the landlord’s relinquishment of its right to the charges. In that case, however, the court found that “there was an agreement or understanding waiving or surrendering the claim.” Id. at 613. Here, there was no such understanding that the claim would be surrendered. While the partnerships may not have brought the tax bills to Pizzeria Uno’s attention in a timely fashion, Pizzeria Uno does not dispute the assessments as wrongful. Hence, the partnerships are entitled to summary judgment on the Carousel Lease tax issue.
ORDER
For the foregoing reasons the partnerships’ motion for partial summary judgment is allowed in part and denied in part as follows:
Summary judgment is allowed on count I as to: (1) any claim for breach of the Carousel and Walden *246 Leases prior to the July 23, 1992 lease modification agreements; (2) any pre-1991 common area overcharges involving the Independence Lease; and, (3) the claim concerning real estate taxes on the Carousel Lease; otherwise, summary judgment is denied as to count I.
Summary judgment is allowed as to counts II, IV, V and VII.
Summary judgment is allowed as to so much of count III as relies on usury or breach of contract claims on which the partnerships’ summary judgment motion has been allowed; otherwise, summary judgment is denied as to count III.
Summary judgment is allowed on count VIII under the Walden and Carousel Leases as to any claim relating to operating cost statements issued before July 23, 1992, and under the Independence Lease as to any claim relating to operating costs before 1991; otherwise summary judgment is denied as to count VIII.

An additional notice of increase was sent based upon the opening of a Lechmere store at Independence in November 1992, but it was determined subsequently that this store did not meet the 60,000-square-foot minimum in the Independence Lease and therefore no increase in rent was due.

See p. 3, supra.

Notwithstanding the choice of law provisions in the Leases, the plaintiffs’ fraud claims sound in tort, and the contractual choice of law provisions do not govern tort claims. Massachusetts courts follow the so-called functional approach of the Restatement (Second) of Conflict of Laws, which looks to the law of the state with the most significant relationship to the tort and the parties. Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 646 (1994). In this case, that approach indicates that the law of the states in which the malls are located controls. Id. The disposition of this case is not dependent on whether the court applies New York or Massachusetts law.

Pizzeria Uno argues that the extrinsic representations should not be barred as a matter of law because they explain the ambiguous term “department store." The court agrees that there is a genuine issue of fact relative to the term "department store” (see section III, infra.). The motion for partial summary judgment does not address the claim that the defendants breached the Leases based on their interpretation of the term “department store.” To the extent the term “department store” is ambiguous, Pizzeria Uno will be entitled to introduce parol evidence to explain the parties’ understanding as to the meaning of that term. Keating v. Stadium Management, 24 Mass.App.Ct. 246, 249 (1987).