■ STEVENS & THOMPSON PAPER COMPANY, INC., Appellant, v NIAGARA MOHAWK POWER CORPORATION, Respondent. [853 NYS2d 423]—

Mercure, J.P.

Plaintiff owned and operated a paper mill and hydroelectric power plant located on the Battenkill River in the hamlet of Middle Falls, Washington County, and obtained utility service from defendant. Pursuant to a 1987 agreement between the parties (hereinafter the PPA), defendant agreed to purchase the full energy output generated by plaintiff's hydroelectric power plant at specified contractual rates. As relevant here, the PPA required plaintiff to "own and maintain its interconnection with [defendant's] transmission system, including the generator output leads, the generator step-up transformer, and the 34.5 kV tap, together with associated equipment." This interconnection equipment was located both on the hydroelectric power plant parcel and the mill parcel; specifically, a substation and the 34.5 kV transmission line were located on the mill parcel.

By December 1995, plaintiff had incurred a debt to defendant of approximately $900,000 for power consumed by the paper

mill. As a result, the parties entered into a repayment agreement requiring, among other things, that plaintiff pay defendant 10% of the proceeds received from the sale of certain assets of the paper mill. Plaintiff thereafter entered into an agreement to sell to American Tissue the assets comprising its "tissue paper production business" and the mill parcel, including "any and all buildings, plants and other structures and improvements thereon." Although plaintiff retained an easement permitting access to the interconnection equipment and certain assets were expressly excluded from the sale, ownership of the interconnection equipment located on the mill parcel was not addressed in the asset purchase agreement with American Tissue.

Following the sale to American Tissue in June 1996, defendant advised plaintiff that it was in material breach of the PPA based upon plaintiff's alleged failure to maintain ownership of the interconnection equipment. Accordingly, defendant refused to pay plaintiff the agreed-upon contractual rate for electricity generated by the hydroelectric plant, instead paying only a reduced tariff rate between July 1, 1996 and September 14, 1996. Thereafter, in September 1996, plaintiff and American Tissue entered into an Energy Delivery Agreement (hereinafter the EDA), which was deemed effective May 31, 1996, and provided that plaintiff retained ownership of "all equipment utilized in the delivery of electricity from [plaintiff] to [defendant] and located on the Mill Parcel." Defendant concluded that although the interconnection equipment had initially been sold, the EDA transferred ownership of that equipment back to plaintiff on September 15, 1996, and recommenced paying the contractual rate as of that date.

Subsequently, plaintiff commenced this breach of contract action alleging that defendant's refusal to pay the contractual rate for electricity generated by the hydroelectric plant from July 1, 1996 to September 14, 1996 constituted a breach of the PPA, entitling plaintiff to damages of $292,165.78 plus interest for a total of approximately $1.6 million as of the commencement of trial. Following a nonjury trial, Supreme Court entered judgment in defendant's favor. Plaintiff appeals, arguing that Supreme Court erred in determining that the asset purchase agreement between plaintiff and American Tissue unambiguously conveyed the interconnection equipment to American Tissue. We disagree and now affirm.

It is well settled that "[w]hether or not a writing is ambiguous is a question of law to be resolved by the courts" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). Where the

contract is unambiguous, "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (*id.; see Bailey v Fish & Neave*, 8 NY3d 523, 528 [2007]). That is, " 'extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face' " (*W.W.W. Assoc. v Giancontieri*, 77 NY2d at 163 [citation omitted]; *accord South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 278 [2005]). In that regard, "*silence does not equate to contractual ambiguity*" (*Greenfield v Philles Records*, 98 NY2d 562, 573 [2002] [emphasis added]; *see Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]). Thus, "courts 'may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing' " (*Bailey v Fish & Neave*, 8 NY3d at 528, quoting *Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]; *accord Reiss v Financial Performance Corp.*, 97 NY2d at 199). We note that these principles are "particularly important in the context of real property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length" (*South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d at 277 [internal quotation marks and citations omitted]; *see W.W.W. Assoc. v Giancontieri*, 77 NY2d at 162).

Here, the asset purchase agreement defines the "Acquired Assets" as "all right, title, and interest in and to . . . those assets of [plaintiff] located on the [p]remises . . . including . . . that certain parcel of land in Greenwich, New York described on Exhibit 'A', together with any and all buildings, plants and other structures and improvements thereon, any and all rights and privileges pertaining thereto or to any of such buildings, plants or other structures or improvements, and any and all fixtures, machinery, installations, equipment and other property attached thereto or located thereon to the extent such are part and parcel of the [p]remises." As Supreme Court concluded, this broad, all-encompassing definition conveying, among other things, "any and all buildings, plants and other structures and improvements" on the premises unambiguously applies to the interconnection equipment at issue—a substation including a heavy duty steel structure and related electrical equipment, such as transformers, mounted on a concrete slab along with an adjacent concrete block building; the 34.5 kV overhead transmission lines; and 40-foot high wood utility poles set in the

ground and supported by guy wires and anchors and designed for the terrain of the site (*see generally Lewis-Moors v Contel of N.Y.*, 78 NY2d 942, 943 [1991]; *Ackley v New York State Elec. & Gas Corp.*, 8 AD3d 941, 942 [2004]; *230 Park Ave. Assoc. v Penn Cent. Corp.*, 178 AD2d 185, 185-186 [1991]).

Nevertheless, plaintiff contends that the asset purchase agreement was ambiguous because the interconnection equipment was omitted both from a list of appraised assets and a list of excluded office equipment and furniture. The omission of the interconnection equipment from these noncomprehensive lists, however, does not create an ambiguity (*see Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d at 475; *Greenfield v Philles Records*, 98 NY2d at 573; *Reiss v Financial Performance Corp.*, 97 NY2d at 199). Plaintiff does not dispute that the scope of the transaction, which involved the transfer of 16 buildings, manufacturing and office facilities, support infrastructure and certain personal property, precluded delineation and appraisal of all items to be transferred. Indeed, given plaintiff's admitted awareness of the requirement in the PPA signed with defendant that it continue to own the interconnection equipment, its failure to name the interconnection equipment in the list of specifically excluded assets supports a conclusion that the interconnection equipment is included within the definition of "[a]cquired [a]ssets." Nor does the fact that plaintiff retained an easement over the mill parcel preserving access for an interconnection with defendant's transmission system create an ambiguity regarding the transfer of ownership of the interconnection equipment. In reserving an easement, plaintiff retained only a nonpossessory right of access, which is not equivalent to retaining ownership of the interconnection equipment as required by the PPA (*see generally Matter of Friends of Shawangunks v Knowlton*, 64 NY2d 387, 394 [1985]; *Di Leo v Pecksto Holding Corp.*, 304 NY 505, 511 [1952]).

In short, the asset purchase agreement was unambiguous—having "a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (*CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d 654, 656 [2004] [internal quotation marks and citations omitted]). Thus, extrinsic evidence of the parties' intent—such as the subsequently executed EDA providing that plaintiff retained ownership of the interconnection equipment—is not admissible to imply a term, create an ambiguity or vary the terms of the asset purchase agreement (*see Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d at 472; *Reiss v Financial Perfor-*

*mance Corp.*, 97 NY2d at 198-199; *W.W.W. Assoc. v Giancontieri*, 77 NY2d at 163), particularly given the broad merger clause contained in the agreement (*see Payne v Enable Software*, 229 AD2d 880, 882 [1996]; *Bruni v County of Otsego*, 192 AD2d 939, 942 [1993]). Accordingly, inasmuch as the asset purchase agreement unambiguously transferred the interconnection facilities to American Tissue and thereby violated the PPA's requirement that plaintiff retain ownership of that equipment, Supreme Court properly dismissed the complaint and granted judgment in defendant's favor. Plaintiff's remaining arguments have either been rendered academic by our decision or, upon consideration, have been found to be lacking in merit.

Peters, Spain, Lahtinen and Malone Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.