## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered: May 21, 2015                    518956
_____

ARGELIS DEL CARMEN LIBASCI,
                    Respondent,

        v                                   MEMORANDUM AND ORDER

ARIADNE SINGARES,
                    Appellant,
                    et al.,
                    Defendant.
_____

Calendar Date:   February 10, 2015

Before:   Lahtinen, J.P., Garry, Lynch and Devine, JJ.

                    _____

        Hacker Murphy, LLP, Latham (Ryan M. Finn of counsel), for
appellant.

        Henry Blumenthal, New York City, for respondent.

                    _____

Devine, J.

        Appeals (1) from an order of the Supreme Court (Nichols,
J.), entered July 5, 2013 in Columbia County, which, among other
things, granted plaintiff's motion for summary judgment against
defendant Ariadne Singares, and (2) from the judgment entered
thereon.

        Following the death of her father in 1990, defendant
Ariadne Singares (hereinafter defendant), her mother and her
siblings inherited shares in a condominium unit located in New
York City.  Defendant held a 37.7778% interest in the condominium
unit and her sister, plaintiff, held a 4.4444% interest.
Defendant experienced financial difficulties and, in 2010, sought
to obtain a private refinancing loan upon the condominium unit

which would enable her to pay off the existing mortgage and recover $125,000 in equity. To proceed with this plan, defendant required the approval of each of the co-owners. She allegedly obtained the approval and an executed power of attorney from each of her family members for this purpose, with the exception of plaintiff.

In September 2010, defendant's attorney forwarded a proposed power of attorney form to plaintiff, together with a separate document that he had prepared to memorialize an agreement between the two sisters. This agreement provided that, for the stated consideration of $10 "and other good and valuable consideration," the proceeds of any future sale of the condominium unit allocable to their combined 42.22% ownership "shall be divided equally between them." Plaintiff executed and returned this agreement, but refused to execute the power of attorney. In December 2011, the unit was sold. Defendant Andrew F. Blumenthal distributed the proceeds to the various co-owners in accord with their respective interests prior to the purported agreement between plaintiff and defendant. Contrary to the suggestion of our dissenting colleague, defendant maintained that the agreement was invalid after learning that plaintiff intended to rely upon it, but agreed to let the sale move forward and save the dispute between herself and plaintiff for another day. Blumenthal accordingly held in escrow the sum representing the share that was to be transferred by defendant to plaintiff by the terms of the agreement.

Plaintiff thereafter commenced this action demanding enforcement of the terms of the agreement, and subsequently moved for summary judgment against defendant. Defendant opposed the motion and cross-moved for summary judgment dismissing the complaint. Supreme Court granted plaintiff's motion and denied defendant's cross motion, finding that the agreement was unambiguous on its face and that extrinsic evidence for the purpose of revealing additional terms was therefore inadmissible. Defendant appeals.[1]

---

[1] Blumenthal supported plaintiff's position before Supreme Court and has not submitted a brief on this appeal.

Defendant contends that Supreme Court erred in refusing to consider extrinsic evidence showing that the parties never reached a meeting of the minds as to the consideration for the agreement, specifically a commitment by plaintiff to execute the power of attorney. We have no quarrel with the dissent's assertion that, where an agreement between parties is unambiguously set forth in writing, "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]; see Schron v Troutman Sanders LLP, 20 NY3d 430, 436 [2013]). We do not, however, share the view of our dissenting colleague that this is what defendant is attempting to do here. In order "'[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms' and consideration" (Wild v Hayes, 68 AD3d 1412, 1414 [2009], quoting Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584, 589 [1999]). Defendant is not arguing that a valid agreement between the parties included an unstated commitment by plaintiff to execute the power of attorney; instead, she is asserting that she proposed an agreement upon that understanding, but that there was never a meeting of the minds on the issue sufficient to give rise to a valid agreement. Accordingly, she was entitled to use parol evidence "to show that what appears to be a contractual obligation is, in fact, no obligation at all" (Paolangeli v Cowles, 208 AD2d 1174, 1175 [1994] [internal quotation marks, brackets and citations omitted]; see Kamp v Fiumera, 69 AD3d 1168, 1170 [2010]; Jerome Prince, Richardson on Evidence § 11-203 [Farrell 11th ed 2008]).

Turning to that parol evidence, defendant provided an email exchange between her counsel and plaintiff that corroborates her contention that she only agreed to give up a part of the sale proceeds to which she was entitled in return for the grant of plaintiff's power of attorney that would allow her to obtain a refinancing loan. Counsel simultaneously sent the proposed agreement and a power of attorney form to plaintiff and, had she executed both, they would undoubtedly have been construed together (see Whittlesey v Delaney, 73 NY 571, 575-576 [1878];

Smith v Shields Sales Corp., 22 AD3d 942, 943 [2005]).  Plaintiff only executed the proposed agreement, however, indicating that a power of attorney was unnecessary because she was "ready, will[ing] and able to attend in person any required closing or meetings."  Plaintiff confirmed that a refinancing was contemplated when she sought further details on "the refinance" the next day, and those details were provided in short order.  She then consulted with an attorney and, four days later, abruptly changed course and indicated that the unit "should not be refinanced under any circumstances."  Plaintiff further stated, for the first time, that she did not execute a power of attorney because she was concerned about defendant's management of the condominium unit.

     None of this proof regarding the contours of the deal is contradicted by the language of the proposed agreement, which only refers to the exchange of $10 "and other good and valuable consideration" (see Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255, 258 [1970]; Diamond v Scudder, 45 AD3d 630, 632 [2007]; compare Cammeby's Equity Holdings LLC v Mariner Health Care, Inc., 106 AD3d 563, 563-564 [2013]).  The correspondence between the parties demonstrates, at a minimum, that there was no meeting of the minds as to what that "other good and valuable consideration" was.  Indeed, in light of plaintiff's refusal to execute a power of attorney and unwillingness to allow a refinancing to move forward, one is left to question whether she gave any consideration in return for a greater share in the sale proceeds that rightfully belonged to defendant.  Therefore, defendant met her burden of demonstrating that the purported agreement was unenforceable (see e.g. Connolly v Knight, 95 AD3d 926, 927-928 [2012]; Von Bing v Mangione, 309 AD2d 1038, 1040 [2003]).[2]

_____

     [2]  We are unpersuaded that plaintiff is correct in arguing that General Obligations Law §§ 5-1103 and 5-1107 apply to the purported agreement between the parties.  In any case, those provisions do not alter the result because the proof demonstrates that plaintiff materially misrepresented the consideration that she was willing to give in order to induce defendant to convey a portion of her ownership interest in the condominium unit (see

Plaintiff did not raise any questions of fact in response. An affirmation was submitted by Blumenthal, who handled the closing when the unit was sold, but he gave no explanation as to how he has personal knowledge of the facts surrounding the execution of the agreement. The record thus demonstrates that defendant is entitled to judgment as a matter of law, and we modify the order and judgment of Supreme Court to grant her cross motion insofar as she sought summary judgment dismissing the complaint. Questions of fact continue to exist with regard to defendant's counterclaim — which asserts that she is entitled to counsel fees due to the sanctionable conduct of plaintiff in commencing this action to recover under the purported agreement — and further proceedings are required upon that issue.

Lahtinen, J.P. and Lynch, J., concur.

Garry, J. (dissenting).

I respectfully dissent. At the outset, it must be noted that defendant Ariadne Singares (hereinafter defendant) failed to object or to seek relief for more than a year following receipt of the subject contract from plaintiff. When this action was commenced, defendant did not assert a defense of fraud or unconscionability. Thereafter, in the affidavits submitted upon this appeal, defendant did not claim that there was any failure of consideration, other than plaintiff's failure to execute and return the power of attorney, a separate document left wholly unmentioned and unaddressed within the subject contract.

Against this backdrop, the majority determination nonetheless reaches for parol evidence outside the contract in an effort to relieve defendant of the unfortunate consequences of her attorney's poor draftsmanship. This necessarily results in undermining longstanding principles of contract law. In contract analysis, the "vital first step" is that "before looking to evidence of what was in the parties' minds, a court must give due weight to what was in their contract" (W.W.W. Assoc. v

McFarland v Salerno, 40 AD3d 514, 514 [2007]).

Giancontieri, 77 NY2d 157, 162 [1990]).  Here, the majority instead allows an improper reliance upon the parol evidence to examine the parties' intent, in derogation of the clear and unambiguous terms of their contract.

It is well settled that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.  Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (id. at 162 [citations omitted]; see Stevens & Thompson Paper Co., Inc. v Niagara Mohawk Power Corp., 49 AD3d 1011, 1012-1013 [2008]; Mount Florence Group v City of Peekskill, 235 AD2d 787, 789 [1997]).  Moreover, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (Stevens & Thompson Paper Co., Inc. v Niagara Mohawk Power Corp., 49 AD3d at 1013 [internal quotation marks and citations omitted]).  Nowhere within this plainly worded, one-page contract does the term or any reference to a "power of attorney" appear, nor does the contract contain anything that would render it ambiguous or remotely susceptible to differing interpretations.  It is solely by first reviewing and resorting to the parol evidence that any support may be found for the conclusion that the parties' agreement included a commitment by plaintiff to provide a power of attorney as consideration.

This case does not truly fall within the narrow exception to the parol evidence rule permitting consideration of parol evidence "to show that what appears to be a contractual obligation is, in fact, no obligation at all" (Paolangeli v Cowles, 208 AD2d 1174, 1175 [1994] [internal quotation marks and citation omitted]).  As applied in our cases, including those cited by the majority, this limited exception applies only where a party alleges that a document, although appearing to be a contract, was never intended by the parties to operate as such (see Paolangeli v Cowles, 208 AD2d at 1175 [parol evidence admissible where "not offer[ed] . . . to vary the terms of [a] promissory note, but rather to show that the note was never intended to take effect"]; Kamp v Fiumera, 69 AD3d 1168, 1170

[2010] [parol evidence may be considered when offered "not merely to contradict the express terms of [a] note, but . . . to demonstrate that the note was never intended to be an obligation enforceable against [the defendant]" [internal quotation marks and citations omitted]; see also Greenleaf v Lachman, 216 AD2d 65, 65-66 [1995], lv denied 88 NY2d 802 [1996] [parol evidence admissible to show that "the parties never considered [the purported loan agreement to be] a binding debt"]).  Here, in contrast, neither party argues that they did not intend to enter into an enforceable contract; instead, the parties' sole dispute pertains to whether the contract should have included an additional, unstated form of consideration.  The expansive interpretation of this exception, as advanced here, threatens to swallow the parol evidence rule itself by allowing any dissatisfied party to call an unambiguous contract into doubt by simply suggesting that some other, additional consideration beyond that set forth in the contract was contemplated.

Finally, "the commonplace recital of 'other good and valuable consideration' does not render the . . . contract ambiguous or incomplete" (Schron v Troutman Sanders LLP, 20 NY3d 430, 436-37 [2013]).  If this nearly universal language may be used to read ambiguity into a contract, there is hardly a contract in existence that is not thereby rendered susceptible to judicial second-guessing.  This would then ultimately result in precisely the climate of uncertainty that the parol evidence rule was designed to prevent.  In a variety of contexts we are called upon to disregard evidence that — although clearly probative to the case at hand — simply cannot be considered without threatening fundamental principles of law, based upon sound underlying policy.  I find the exercise of such restraint to be necessary here.  Accordingly, I must dissent.

ORDERED that the order and judgment are modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion for summary judgment and denied defendant Ariadne Singares' cross motion insofar as it sought summary judgment dismissing the complaint; motion denied, cross motion granted to that extent, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court