OPINION OF THE COURT
Walter B. Tolub, J.
*291 This action raises the novel question as to whether a rent-stabilized tenant, who received permission from the landlord to alter the premises by creating an opening between two rent-stabilized apartments, has a right to restore the opening pursuant to a clause contained within her lease.
Background
Plaintiff Dominique Bazin is the rent-stabilized tenant of record for apartments 8A and 8B located at 240 West End Avenue in Manhattan. Apartment 8A was leased to Ms. Bazin and her then husband, Peter M. Thall, in 1979. In 1983, Ms. Bazin and Mr. Thall, who were expecting their second child,[1] entered into a second lease for apartment 8B, the unit directly adjacent to apartment 8A.
Pursuant to the lease for apartment 8B, the landlord, then 240 West Company, allowed Ms. Bazin and Mr. Thall to construct an entrance connecting both apartments: “39. It is understood and agreed that Tenant may construct an entrance through the foyer area only, from Apartment 8-A to Apartment 8-B. It is also understood that Tenant has deposited $700.00 which may be used for the restoration of the proposed aforesaid opening.” (Order to show cause, exhibit H.)
In accordance with the terms of the lease for apartment 8B, Ms. Bazin and Mr. Thall removed a 3V2-foot portion of a closet wall which separated the two units.[2] For the next 19 years, the two apartments, although subject to separate lease agreements, were occupied as a single residence.
At some point in 2002, Helmsley Spear, Inc., as landlord, attempted to register apartments 8A and 8B with the Division of Housing and Community Renewal (DHCR) as a single apartment unit (the 2002 proceeding). By decision dated November 11, 2002, DHCR terminated the 2002 proceeding, concluding that “[e]vidence in the record indicates that apartments 8A and 8B were registered as separate units from the base date to present. There is no evidence in the record that a new apartment has been created which would warrant an initial registration.” (Order to show cause, exhibit Q.)
*292 The Genesis of the Instant Controversy
Notwithstanding the fact that the two apartment units remained connected by the interior opening created in 1983, by 2003, it appears that Ms. Bazin was residing exclusively in apartment 8B, and Ms. Thall was residing exclusively in apartment 8A. It was this living arrangement which prompted Ms. Bazin to return the 2003 renewal lease for apartment 8A to the landlord, 240 West LLC, accompanied by a letter advising the landlord that Ms. Bazin was no longer living in apartment 8A, and therefore wished to have the lease for apartment 8A put in Ms. Thall’s name (see order to show cause, exhibit I).[3] The landlord, in response to the letter, requested the submission of documented proof of Ms. Thall’s relationship to Ms. Bazin,[4] and sought a further clarification with respect to Ms. Bazin’s interest in apartment 8A, directing Ms. Bazin to: “[p]lease advise us if you are surrendering your interest to the apartment, and álso advise us of your intentions with regard to the adjoining apartment, since one could not surrender their interest to half an apartment.” (Order to show cause, exhibit J.)
At some point in June of 2005, and seemingly without having registered apartments 8A and 8B with DHCR as a single apartment unit, 240 West LLC, as landlord, filed a petition for high income rent deregulation for the “housing accommodation” identified as “240 West End Avenue Apt. No. 8A/8B” (see order to show cause, exhibit W). On June 6, 2005, notwithstanding DHCR’s prior determination in 2002 that the two apartments could not be registered as one unit, the rent administrator reviewing the petition somehow arrived at the conclusion that apartments 8A and 8B were combined for luxury deregulation purposes (id.). Deregulation, however, was denied because the combined annual income of the occupants of apartments 8A and 8B did not exceed the threshold amount of $175,000 in 2003 (id.). It appears that this determination was not appealed.
On September 28, 2005, Ms. Bazin, through counsel, indicated her intent to restore the closet wall which had been removed in 1983. The letter, in pertinent part, reads:
*293 “In accordance with paragraph 39 of the lease for Apartment 8B (copy enclosed), Ms. Bazin intends to restore the wall between apartments 8A and 8B which are being used separately now. Please let us know, whether you would rather send our client a check for $700 pursuant to paragraph 39 (which states that the $700 deposited may be used for this purpose), or whether you would prefer the cost be deducted from October’s rent” (order to show cause, exhibit N).
Counsel for the landlord responded to plaintiffs’ letter on October 3, 2005 claiming it had no proof that plaintiff had paid an additional $700 as claimed, and further advised Ms. Bazin to take no steps to restore the wall, citing the necessity for plans for the construction in compliance with applicable portions of the building code (order to show cause, exhibit O).
At some point during 2006, defendant landlord obtained new legal counsel and began returning rent checks tendered by Ms. Thall for apartment 8A.[5] On October 17, 2006, defendant landlord served Ms. Bazin with a notice of termination for apartment 8A claiming that the lease had expired on September 30, 2006.[6] This action,[7] and the accompanying motion practice, followed. By this motion,[8] plaintiffs seek an order allowing for the restoration of the closets and the portion of the wall removed between apartments 8A and 8B pursuant to the 1983 lease for apartment 8B.
*294 Discussion
The. only issue that this court is required to address at this juncture is whether Ms. Bazin has a right under the lease for apartment 8B to restore the portion of the wall and closets removed by Ms. Bazin and hqr former husband in 1983.. Ms. Bazin argues that paragraph 39 of the apartment 8B lease gives her this right to restore tlié premises. Defendant takes the position that the lease provision confers no such right, and, even if it does, that right lies in favor of the landlord, and may be elected only after the apartment units are vacated.
Whether or not a contractual provision contains an ambiguity is a question of law to be resolved by the courts (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d 186, 191 [1986]; 1414 APF, LLC v Deer Stags, Inc., 39 AD3d 329, 331 [1st Dept 2007]). An ambiguity does not exist simply because the parties urge different interpretations of the contract’s terms (Bethlehem Steel Co. v Turner Constr. Co., 2 NY2d 456 [1957]; Elletson v Bonded Insulation Co., 272 AD2d 825 [3d Dept 2000]), but is the result of the terms of an agreement being susceptible to more than one reastinable interpretation (239 E. 79th Owners Corp. v Lamb 79 & 2 Corp., 30 AD3d 167 [1st Dept 2006]). Furthermore, any ambiguity found in a contract is always construed against the drafting party (see Guardian Life Ins. Co. of Am. v Schaefer, 70 NY2d 888 [1987]; Computer Assoc. Intl., Inc. v U.S. Balloon Mfg. Co., Inc., 10 AD3d 699 [2d Dept 2004]; Morrison Cohen Singer & Weinstein v Network Indus. Corp., 292 AD2d 153 [1st Dept 2002]; Chatterjee Fund Mgt. v Dimensional Media Assoc., 260 AD2d 159 [1st Dept 1999]).
Having reviewed paragraph 39 of the lease for apartment 8B, the court notes, and emphasizes, that the provision, while clearly giving the tenants the right to create an opening between apartments 8A and 8B, is devoid of any language conclusively indicating which party may undertake restoration of any opening created, and when those restorations may be undertaken. Further reading of the lease for apartment 8B does nothing to illuminate this question (see order to show cause, exhibit H). The provision, by definition, is, therefore, ambiguous.
“[A] court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to” (Korff v Corbett, 18 AD3d 248, 250 [1st Dept 2005], quoting Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 91 [1991]). As such, the court may look to the circumstances existing at the time the contract was entered into, the situation of *295 the parties, and, if necessary, consider any parol evidence to clear up any ambiguity in the language of the contract (Korff v Corbett, 18 AD3d 248 [2005]).
Since neither party is favored by the language contained within paragraph 39 of the lease for apartment 8B, this court can only conclude that the parties contemplated the restoration of any opening created by either the landlord or the tenant. Moreover, since the lease provision is silent as to when that restoration may occur, the court can conclude that the parties contemplated situations outside of the tenants vacating both apartments, where restoration would be warranted. The right to restore the opening may, therefore, be elected by either party. As such, Ms. Bazin may restore the opening, i.e., the walls and closets which were removed in 1983 in order to create a passageway between apartments 8A and 8B, provided that she obtains any and all necessary permits as required by law. Furthermore, if Ms. Bazin decides to restore the opening, the landlord shall cooperate with said construction.
Accordingly, it is ordered that the relief sought by this motion is granted to the extent indicated.

. The occupant “baby-to-be” identified on the lease for apartment 8B is plaintiff Sophie Thall (order to show cause, exhibit H, ¶ 37).

. Defendant further asserts that the kitchen in apartment 8A was removed in its entirety (affidavit in opposition; see also order to show cause, exhibit R).

. The court notes that neither the 2002 renewal lease nor the actual letter claimed to have accompanied the lease appear as exhibits to either of the parties’ submissions.

. In response to this request, Ms. Bazin submitted, among other items, copies of Ms. Thall’s birth certificate, driver’s license, and voter registration. It appears that the landlord did not respond to the submission of these documents.

. The court notes that, until 2006, the prior landlord had no problem accepting and cashing rent checks drawn from Ms. Thall’s bank account (see order to show cause, exhibit S).

. The lease for apartment 8A expired on September 30, 2005, one year earlier than claimed in the October 17, 2006 notice of termination. It is undisputed that defendant landlord did not provide Ms. Bazin with a renewal lease for apartment 8A prior to the expiration of the lease in 2005. A renewal lease for apartment 8A was not offered until June 21, 2006, retroactive to October 1, 2005 (order to show cause, exhibits R, C, D).

. Plaintiffs’ complaint is comprised of two causes of action. The first cause of action seeks an order (1) allowing (a) the restoration of apartments 8A and 8B to their original condition and (b) allowing the completion of repairs to bathroom tiles; (2) a determination that Sophie Thall is the lawful tenant of apartment 8A; and (3) an order preventing defendants from proceeding on the notices of termination served upon plaintiffs. The second cause of action seeks legal fees pursuant to Real Property Law § 234.

. Plaintiffs initially sought an order prohibiting defendant from (1) interfering with plaintiffs’ completion of bathroom repairs, and (2) proceeding on notices of termination dated October 17, 2006 and November 2, 2006. Following submission of the motion, the aforementioned requests for relief were withdrawn (see May 17, 2007 letter).