[894 NYS2d 411]

Dominique Bazin et al., Respondents, v Walsam 240 Owner, LLC, Appellant.

First Department, February 9, 2010

### APPEARANCES OF COUNSEL

*Steven Raison*, New York City, and *Belkin Burden Wenig & Goldman, LLP*, New York City (*Magda L. Cruz* of counsel), for appellant.

*Vernon & Ginsburg, LLP*, New York City (*Darryl M. Vernon* and *Sanem Ozdural* of counsel), for respondents.

### OPINION OF THE COURT

SAXE, J.

This appeal challenges the motion court's interpretation of a lease rider that gave the rent-stabilized tenants of two adjoining apartments permission to connect the two apartments by breaking through the common wall of back-to-back foyer closets. The court rejected the landlord's assertion that it alone has the authority to decide whether to restore the wall, and held that, under the lease, the tenants were entitled to restore the wall to its former condition if they so chose. We reverse.

In 1979, plaintiff Dominique Bazin and her then husband, Peter Thall, became rent-stabilized tenants of apartment 8A, a two-bedroom unit, at 240 West End Avenue, a building then owned by 240 West LLC. In 1983, the couple also rented the adjoining one-bedroom apartment, 8B, entering into a lease for that unit which contained a rider with the following language:

> "39. It is understood and agreed that Tenant may construct an entrance through the foyer area only, from Apartment 8-A to Apartment 8-B. It is also understood that Tenant has deposited $700.00 which may be used for the restoration of the proposed aforesaid opening."

The apartments were thereafter combined by the tenants through the creation of an entrance approximately 3¹/₂ feet

wide in the identified portion of the wall. Further, the landlord asserts, without contradiction, that the kitchen fixtures in 8A were removed, and the gas and plumbing lines were capped and sealed, with the approval of the New York City Buildings Department.

At some point thereafter, Thall and Bazin divorced, and Bazin became the sole tenant of record of both apartments. Also residing in the apartments was the couple's daughter, plaintiff Sophie Thall, who was born in 1983.

The record contains no indication that the landlord took any steps between 1983 and 2002 to formally treat the combined apartments as a reconfigured single apartment. There was neither a proposal nor an attempt to treat the combined apartments in a single lease, nor was any effort made to amend the certificate of occupancy to reflect the reconfiguration. The landlord submitted with its opposition to plaintiffs' motion for permission to restore the wall an affidavit by an expediter asserting that he reviewed the Buildings Department file and that the documents therein reflect that "[t]he combined unit 8AB is a legal single unit in full compliance with Department regulations," and referring to "a comprehensive floor plan detailing the work performed to create this combined unit." However, the affidavit does not indicate when any of this occurred, and no copies of the cited documents were provided.

In 2002, the landlord attempted to register 8A/8B as a single unit with the Division of Housing and Community Renewal (DHCR). That attempt was rejected by DHCR in an order dated November 27, 2002, in which DHCR explained that the evidence submitted to it indicated that apartments 8A and 8B had been registered as separate units and "[t]here is no evidence in the record that a new apartment had been created which would warrant an initial registration."

In July 2003, Bazin returned to the landlord the renewal lease she had been sent for apartment 8A, stating that she no longer lived in that apartment and that the lease should be in the name of Sophie Thall, her now adult daughter, who had resided in the apartment since her birth. An exchange of letters ensued, but it appears that no such lease was ever produced.

In June 2005, the landlord took a different tack, filing a petition for high income rent deregulation of apartment 8A/8B. On June 23, 2006, the petition was denied, because while DHCR acknowledged that the two apartments were a single combined living unit for purposes of high income rent deregulation, it

concluded that the combined annual income of the tenants was not in excess of $175,000 in 2003.

After the high income rent deregulation petition was filed, plaintiff's counsel advised the landlord in a letter dated September 28, 2005 that, "[i]n accordance with paragraph 39," Bazin intended to restore the wall between the apartments. He inquired whether the landlord wished to send Bazin a check for $700 or have her deduct the cost from her rent. Counsel added that, if the landlord believed that this restoration required its permission, it should let plaintiffs know, and should "of course grant permission as required under paragraph 39."

The landlord's counsel responded by requesting that plaintiffs forward proof that they had ever paid the $700 deposit, and directing that no steps be taken, inasmuch as "[a] wall between two (2) apartments must [be] constructed according to the Building Code" and required approval of plans. Plaintiffs' counsel replied that the lease acknowledged payment of the deposit and that Buildings Department approval was not necessary, since no such permits or plans had been needed or used for the removal of the wall.

In October 2006, the landlord began returning Sophie's rent checks for apartment 8A.

On or about February 12, 2007, plaintiffs commenced this action for a judgment declaring, among other things, that they are allowed to restore the apartments to their original condition, that Sophie is the lawful tenant of apartment 8A, and that defendant may not proceed on notices of termination served on plaintiffs. Plaintiffs then brought the underlying motion for an order compelling the landlord to allow plaintiffs to complete the alterations and prohibiting it from proceeding on notices of termination; this motion was subsequently limited to requesting only a determination of whether plaintiffs have the right to separate the apartments under paragraph 39 of the lease rider.

The motion court found paragraph 39 ambiguous in failing to indicate which party may undertake restoration of any opening created, and when it may do so. It then found in plaintiffs' favor on the following ground:

> "Since neither party is favored by the language contained within paragraph 39 of the lease for apartment 8B, this court can only conclude that the parties contemplated the restoration of any opening created by *either* the landlord or the tenant. More-

over, since the lease provision is silent as to when that restoration may occur, the court can conclude that the parties contemplated situations outside of the tenants vacating both apartments, where restoration would be warranted. The right to restore the opening may, therefore, be elected by either party. As such, Ms. Bazin may restore the opening, i.e., the walls and closets which were removed in 1983 in order to create a passageway between apartments 8A and 8B, provided that she obtains any and all necessary permits as required by law. Furthermore, if Ms. Bazin decides to restore the opening, the landlord shall cooperate with said construction." (18 Misc 3d 290, 295 [2007].)

The landlord challenges this interpretation of the lease, and argues as well that the ruling improperly made findings of fact in the context of an application for preliminary relief. The landlord further challenges the court's subsequent adherence to this ruling in response to its motion to renew and reargue, in which it asked the court to consider the facts that Sophie had vacated the premises in June 2007 and that a condominium offering plan listing 8A/B as a single unit had been filed in July 2007.

Discussion

The only issue before us is whether the lease gives plaintiffs the right to reconstruct the wall to separate the apartments without the landlord's permission. We hold that it does not.

At the outset, we reject the contention that the challenged order improperly granted a preliminary injunction because plaintiffs failed to demonstrate their entitlement to such relief. This argument misconstrues the nature of plaintiffs' application. The issue presented to the motion court involved the legal interpretation of lease language, i.e., whether plaintiffs had the right under the lease to restore the wall. Although plaintiffs did not seek a final judgment, this was not an application for, or a determination of, preliminary injunctive relief per se. Rather, the motion was akin to a motion for summary judgment on a discrete issue where there are no disputed facts. The motion presented an issue equally amenable to determination as a matter of law at that stage as it would have been in the context of the final judgment in this declaratory judgment action.

However, we disagree with the motion court's construction of the lease. Initially, we take issue with its characterization of the

lease as ambiguous with regard to which party was entitled to restore the wall, and when the restoration could be done. Paragraph 39 provided for the restoration of the wall by the landlord by ensuring that the landlord had funds for the restoration, if it became necessary. The absence of a provision for the possibility that the tenants would decide during the term of the lease that they no longer wanted the opening is not an ambiguity, but merely an omission (*see Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001] [where stock warrants provided for a potential stock split, but failed to address the contingency of a reverse stock split, the court declined to hold that the latter was implicit in the warrants]).

Nor is it appropriate to find implicit in the lease a provision that the parties could have included, but did not. "[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004], quoting *Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 72 [1978]). "Hence, 'courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing' " (*id.*, quoting *Reiss*, 97 NY2d at 199).

Examination of the terms of the lease discloses nothing that explicitly gives the tenants the right to restore the wall after they have removed it as authorized by paragraph 39. Nor do any of the lease terms include such a right by reasonable implication.

Paragraph 9 of the standard form portion of the lease does not support plaintiffs' contention that they possess a contractual right to reconstruct the wall. It reads:

"9. **CARE OF YOUR APARTMENT—END OF LEASE—MOVING OUT**

"A. You will take good care of the Apartment and will not permit or do any damage to it . . . You will move out on or before the ending date of this lease and leave the Apartment in good order and in the same condition as it was when You first occupied it . . .

"B. When this Lease ends, You must remove all of your movable property. You must also remove at

> your own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other installation or attachment You may have installed in the Apartment, even if it was done with Owner's consent. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals."

The portion of paragraph 9 (B) that requires the tenant to remove all "installation[s] or attachment[s]" by its terms is clearly intended to apply only to the type of installations discussed in that paragraph, such as bookcases or cabinets bolted to the wall, and has no application to an alteration such as a doorway newly created in a wall.

If any other provision applies to this situation, it is paragraph 10 of the standard form portion of the lease:

> "10. **CHANGES AND ALTERATIONS TO APARTMENT**

> "You cannot build in, add to, change or alter, the Apartment in any way without getting Owner's written consent before You do anything."

Considered as a whole, the lease (1) permitted the tenants to create an opening, (2) ensured that the landlord would be able to defray the cost of restoring the wall, if necessary, as presumably it would be after the tenants vacated one or both of the apartments, and (3) prohibited the tenants from making any other alterations to the apartments without the landlord's written consent. None of its provisions explicitly or implicitly authorizes the tenants to reconstruct the wall once the agreed-on alteration has been made. The language of paragraph 39, while recognizing and addressing the possibility that the landlord might eventually need to restore the wall, does not address the possibility that the tenants will want to restore the wall during their tenancy. A provision specifically permitting a certain alteration cannot, and should not, be read to implicitly allow for the reversal of that alteration without specific permission for it.

We observe that there is nothing unreasonable or illogical about the parties having provided for the landlord's eventual need to restore the wall, without including any provision for the possibility that the tenants would desire to do so. There were clearly circumstances in which it was foreseeable that the landlord would be forced to restore the wall, or at least might

find it to be advisable. For instance, if the tenants vacated both apartments and the landlord sought to re-let them, it might need to restore them to the configuration reflected in the building's current certificate of occupancy, if it had not amended the certificate of occupancy to reflect the reconfiguration. Or if the tenants vacated one of the two apartments, the landlord would have to restore the wall before leasing the apartment to a new tenant.

In contrast, there was no equivalent foreseeable circumstance in which the tenants would need to restore the wall during their tenancy. The failure to provide for the possibility that the tenants would *prefer* to restore the living quarters to two separate apartments during their tenancy in both apartments is merely an omission due to a failure to imagine other possible developments.

Inasmuch as we vacate the order authorizing plaintiffs to restore the wall without the landlord's permission, we need not address the motion court's failure to reconsider based upon the matters raised in the renewal application.

Accordingly, the order of the Supreme Court, New York County (Walter B. Tolub, J.), entered June 6, 2008, which, upon reargument of a prior motion, adhered to the original determination granting plaintiffs' motion for permission to restore a wall that had previously separated their combined apartments, should be reversed, on the law, without costs, plaintiffs' motion denied, and it should be declared that plaintiffs are prohibited under the lease from making this restoration without the landlord's written consent. The appeal from the order, same court and Justice, entered November 8, 2007, should be dismissed, without costs, as superseded by the appeal from the June 6, 2008 order.

Tom, J.P., Sweeny, Acosta and Freedman, JJ., concur.

Order, Supreme Court, New York County, entered June 6, 2008, reversed, on the law, without costs, plaintiffs' motion for permission to restore a wall that had previously separated their combined apartments denied, and it is declared that plaintiffs are prohibited under the lease from making this restoration without the landlord's written consent. Appeal from order, same court, entered November 8, 2007, dismissed, without costs, as superseded by the appeal from the June 6, 2008 order.