OPINION OF THE COURT
Elizabeth H. Emerson, J.
It is ordered that the motion by the plaintiff (No. 004) for re-argument of so much of an order of this court dated September 7, 2016 (Sup Ct, Suffolk County, Sept. 7, 2016, index No. 600274-15), as denied the branch of her motion which was for attorney’s fees pursuant to Business Corporation Law § 626 (e) is granted; and it is further ordered that, upon reargument, the court adheres to its prior determination; and it is further *729 ordered that the branch of the motion by the plaintiff (No. 003) which is for attorney’s fees pursuant to article XIX (E) of the stipulation of settlement in the Sardis’ matrimonial action is denied.
JLAJ Holding Corp. is a Delaware corporation owned by the plaintiff, Lauren Sardis (33%), and the defendant, Jeffrey Sar-dis (67%). Jeffrey Sardis is JLAJ’s controlling shareholder, as well as its president and sole director. JLAJ’s only asset is its wholly owned subsidiary, AETEA Informational Technology, Inc. AETEA, which is also a Delaware corporation, is in the business of providing IT consulting services to Fortune 500 companies. Jeffrey Sardis is AETEA’s president and sole director. SCCC Holdings Corporation is another Delaware corporation owned by Lauren Sardis (40%) and Jeffrey Sardis (40%).[1] Jeffrey Sardis is SCCC’s president and sole director. SCCC’s only asset is a promissory note dated November 13, 2000, from AETEA in the principal amount of $4 million (the SCCC note). AETEA currently owes SCCC approximately $16 million in principal and accrued interest on the note.
The Sardises, who were married, divorced in 2009. On September 16, 2008, they entered into a stipulation of settlement in their matrimonial action and a stockholders agreement for JLAJ. The stockholders agreement was incorporated by reference in the stipulation of settlement. Pursuant to the terms of the stipulation of settlement and stockholders agreement, Lauren was to be paid distributions in the amount of $300,000 a year in lieu of maintenance, which she waived, and Jeffrey was to be paid a salary in the amount of $500,000 a year. The stockholders agreement required Jeffrey to use commercially reasonable efforts to cause the sale, transfer, conveyance or other disposition of: “(i) all or substantially all of the assets of the Operating Entities,[2] (ii) all of the capital stock of AETEA and Allegiance, or (iii) all of the capital stock of JLAJ” (a liquidity transaction). If a liquidity transaction did not occur by September 16, 2012, Jeffrey’s salary was to be reduced every year until, by September 2014, it was zero.
In April 2014, Jeffrey, as the sole director of AETEA, adopted a resolution to dissolve AETEA and to distribute its assets pursuant to a plan of liquidation and dissolution (the plan). The plan allowed, but did not require, AETEA to pay Jeffrey *730 compensation to implement the plan. Jeffrey then filed a petition in the Delaware Court of Chancery for the appointment of a receiver to oversee AETEA’s winding up and liquidation, “including the negotiation and consummation of one or more sales of [its] property and assets.” In his petition for the appointment of a receiver, Jeffrey made the following statement:
“Petitioner anticipates that one potential purchaser of AETEA’s property and assets will be an entity owned by or affiliated with him. Given Petitioner’s interest in such a potential transaction, as well as [Lauren] Sardis’ history of litigation with Petitioner, appointing an independent receiver subject to the Court’s oversight will ensure that the winding up and liquidation of AETEA is fair and equitable to all stakeholders.”
Lauren, who was not named as a party, intervened in the Delaware proceeding to oppose both the dissolution of AETEA and the appointment of a receiver. Lauren argued, inter alia, that Jeffrey’s dissolution of AETEA and subsequent petition for the appointment of a receiver were part of a plan to sell AETEA’s assets to himself, or to a company owned by or affiliated with him, in violation of article 3 of the stockholders agreement, which provides, in pertinent part, as follows:
“3.1 For purposes of this Agreement, an ‘Approved Sale’ means either the sale, transfer, conveyance or other disposition, in one or a series of related transactions of (i) all or substantially all of the assets of the Operating Entities, (ii) all of the capital stock of AETEA and Allegiance, or (iii) all of the capital stock of JLAJ, which in each case has been approved by both the Board of Directors and the Stockholder(s) holding a majority of the Shares . . . , including, for purposes of clarification a Liquidity Transaction (as defined herein).
“3.2 Notwithstanding anything to the contrary set forth in this Agreement, (i) a transaction with an Affiliate or Family Member of Jeffrey Sardis[3] shall not be an Approved Sale . . . . In order for a trans *731 action to be deemed an Approved Sale, the transaction must be an ‘arms-length’ transaction ....
“3.3 In the event of an Approved Sale, each Stockholder[4] will: (i) consent to and vote for the Approved Sale; (ii) waive any dissenter’s rights and other similar rights with regard to such Approved Sale
On January 9, 2015, Lauren commenced this derivative action alleging, as she did in Delaware, that Jeffrey’s dissolution of AETEA and petition for the appointment of a receiver were part of a plan to sell AETEA’s assets to himself, or to a company owned by or affiliated with him, in violation of article 3 of the stockholders agreement. Lauren also alleged that the plan was designed to evade the provisions of the stipulation of settlement and stockholders agreement that required distributions to be paid to her in lieu of maintenance[5] and that required Jeffrey’s salary to be reduced to zero. Lauren further alleged that the dissolution of AETEA and petition for the appointment of a receiver were events of default under the SCCC note and, therefore, a breach of the stipulation of settlement, which required that neither party enter into any contract or agreement that would adversely affect repayment of the SCCC note.
On February 24, 2015, just a day or two before the answer in this action was due, Jeffrey filed a certificate in Delaware revoking the dissolution of AETEA and reinstating it as a corporation.[6] Shortly thereafter, Jeffrey moved in Delaware to withdraw his petition for the appointment of a receiver for AETEA and to discontinue the Delaware proceeding. Lauren opposed the application unless it was conditioned on the payment of legal fees. Pursuant to a so-ordered stipulation in this action dated July 28, 2015, Lauren and Jeffrey agreed to take all actions necessary to discontinue the Delaware proceeding, and Jeffrey agreed to pay Lauren $175,000. Pursuant to the same so-ordered stipulation, Lauren and Jeffrey agreed to withdraw all motions pending before Justice Crecca in their *732 matrimonial action, and Jeffrey agreed to pay Lauren $65,000 “for counsel fees for all matters pending before Justice Crecca.” Pursuant to a subsequent so-ordered stipulation dated March 28, 2016, Lauren agreed to discontinue this action
“conditioned on approval by the Court and the payment of legal fees, if any, incurred by Plaintiff, which shall be in an amount as agreed upon by the parties hereto or, in the absence of an agreement, in such amount, if any, as determined by the Court on application by Lauren on such schedule and in accordance with such procedure as the Court establishes and the parties agree.”
Lauren moved in this action for an award of attorney’s fees, costs, and disbursements in the total amount of more than $650,000 pursuant to Business Corporation Law § 626 (e) and article XIX (E) of the stipulation of settlement. By an order dated September 7, 2016 (Sup Ct, Suffolk County, Sept. 7, 2016, index No. 600274-15), this court denied the branch of the motion which was pursuant to Business Corporation Law § 626 (e), granted as unopposed the branch of the motion which was pursuant to article XIX (E) of the stipulation of settlement, and put the matter down for a hearing. The court conferenced the matter prior to the hearing on October 20, 2016, and, instead of holding a hearing, directed the parties to submit supplemental papers on the issue of attorney’s fees pursuant to article XIX (E) of the stipulation of settlement. Lauren then moved for reargument of the branch of her motion which was for attorney’s fees pursuant to Business Corporation Law § 626 (e). The original return date of the reargument motion was adjourned to January 20, 2017, to coincide with the parties’ submission of their supplemental papers. All of the papers have now been submitted. Accordingly, the court will reconsider Lauren’s entitlement to attorney’s fees under both the stipulation of settlement and the Business Corporation Law at this time.
The Stipulation of Settlement
Article XIX (E) of the stipulation of settlement provides as follows:
“In the event that either party defaults with respect to any obligation under this Stipulation and said default is not remedied within ten (10) days after the sending of a written notice to the default *733 ing party specifying such default, such defaulting party shall and hereby does indemnify the other party against, or shall reimburse him or her for, reasonable attorney’s fees, disbursements and Court costs incurred by the non-defaulting party in bringing suit or other proceeding to enforce any of the terms, covenants or conditions of this Stipulation to be performed or complied with by the other, provided such suit or other proceeding results in a judgment, decree or order in favor of him or her. For the purpose of this Stipulation, it is understood and agreed that in the event either party shall retain the services of an attorney to demand compliance with a provision of this Stipulation and/or institute an action or other proceeding against the other to enforce any of the terms, covenants and conditions of this Stipulation, and after the institution of such action or proceeding and before judgment is or can be entered, the defaulting party shall finally comply with the previously non-complied with terms, covenant or condition, then and in that event, the action or proceeding shall be deemed to have resulted in a judgment, decree or order in favor of the non-defaulting party.”
By a notice of default dated June 25, 2014, Lauren advised Jeffrey that his dissolution and planned liquidation of AETEA by a receiver appointed by the Delaware Court of Chancery were a breach of article 3 of the stockholders agreement insofar as he anticipated that AETEA would be purchased by an entity owned by or affiliated with him. Lauren also advised Jeffrey that such a sale would be a breach of the stipulation of settlement insofar as it required distributions to be paid to her in lieu of maintenance. By a second notice of default dated November 24, 2014, Lauren advised Jeffrey that his dissolution of AETEA and petition for the appointment of a receiver were events of default under the SCCC note and would adversely affect repayment of the SCCC note in breach of the stipulation of settlement, which required that he not enter into any contract or agreement that would adversely affect repayment of the SCCC note. Lauren also advised Jeffrey that his attempt to obtain compensation to offset his salary reduction was a breach of the stockholders agreement. Jeffrey did not respond to either notice and took no curative action. After Lauren retained counsel to intervene in the Delaware proceeding and *734 to commence this action, Jeffrey abandoned his plan to dissolve AETEA and to liquidate its assets.
In view of the foregoing, Lauren contends that she has established her entitlement to attorney’s fees under XIX (E) of the stipulation of settlement. In opposition, Jeffrey contends that all of the purported events of default upon which Lauren relies presume that the stockholders agreement precludes any sale of AETEA that is not an approved sale, which it does not. Jeffrey contends that nothing in the stockholders agreement prohibits the liquidation and sale of AETEA by a receiver. Jeffrey contends that the sale of AETEA by a receiver would have been a sale to the highest bidder by an independent third party in a process completely outside of his control. Thus, it would not have breached article 3 of the stockholders agreement. Jeffrey contends that the prohibition against the sale of AETEA to an entity owned by or affiliated with him only applies if the sale is an approved sale and that a dissolution and liquidation by a court-appointed receiver is not an approved sale.
It is well settled that a contract is to be construed in accordance with the parties’ intent (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009]). The best evidence of what the parties intended is what they said in their writing (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). A written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms (id.). A court may not write into a contract conditions the parties did not include by adding or excising terms under the guise of construction (see Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]). Moreover, a court should be extremely reluctant to interpret an agreement as impliedly stating something that the parties have neglected to specifically include (see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004]).
The court finds that Lauren’s position is based on a faulty interpretation of the stockholders agreement. The purpose of the stockholders agreement, as articulated in its preamble, is “to provide for certain terms and conditions relating to the operations of JLAJ and the Operating Entities[7] . . . and for the transfer of shares of Common Stock in certain events and upon certain terms and conditions as hereinafter set forth.” *735 “Common stock” is defined as shares of JLAJ. Article 3 of the stockholders agreement, upon which Lauren relies, must be read in conjunction with article 2, entitled “Transfer Restrictions.” Article 2 provides, in pertinent part, as follows:
“2.1 Except as provided in [Article] 3 hereof, each Stockholder agrees that so long as this Agreement shall remain in effect, any Shares (as defined herein) or any interest therein, whether now owned or hereinafter acquired, shall not be offered for sale, sold, assigned, transferred, pledged, encumbered or otherwise disposed of, nor made subject to a security interest therein (in each case, a ‘Transfer’) except (x) with the prior written consent of JLAJ and the other Stockholder, which consent may be withheld for any reason and for no reason .... The term ‘Shares’ shall mean all shares of Common Stock now owned or hereafter acquired by the Stockholders.”
As previously noted, “common stock” is defined as shares of JLAJ. Thus, Lauren and Jeffrey are prohibited from transferring any shares of JLAJ stock without the prior written consent of the other, unless the transfer is an approved sale under article 3. Sections 3.1 and 3.2 of article 3 merely define what is and what is not an approved sale.
The stockholders agreement clearly anticipates that AETEA will be sold and imposes affirmative obligations on the parties to effectuate a sale. Article 6, entitled “Liquidity Transaction,” provides, in pertinent part, as follows:
“6.1 Commencing on the date hereof and continuing through the fourth (4th) anniversary of the date hereof (the ‘Target Sale Date’), Jeffrey Sardis, in his capacity as the sole member of the Board of Directors and Chief Executive Officer of JLAJ, shall use commercially reasonable efforts ... to cause the sale, transfer, conveyance or other disposition, in one or a series of related transactions, of (i) all or substantially all of the assets of the Operating Entities, (ii) all of the capital stock of AETEA and Allegiance, or (iii) all of the capital stock of JLAJ (each, a ‘Liquidity Transaction’).”
Section 6.1 also requires Jeffrey to engage an independent investment bank to expedite the closing of a liquidity transaction, and section 6.7 imposes a penalty on Jeffrey, i.e., the loss of his salary, if a liquidity transaction does not occur by the *736 target sale date. Lauren, for her part, is required to consent to and vote for an approved sale, which includes a liquidity transaction. However, contrary to Lauren’s contentions, the stockholders agreement does not contain a complete prohibition on the sale of AETEA to an entity owned or controlled by Jeffrey. It merely provides that Lauren’s consent to such a sale is required, giving her an opportunity to evaluate its terms, presumably, to ensure that the sale is fair to her and to prevent Jeffrey from selling AETEA to himself in a “sweetheart” deal. While Lauren must consent to and vote for an approved sale, she is under no obligation to consent to and vote for a sale to Jeffrey. Thus, the stockholders agreement allows for a sale of AETEA to Jeffrey, but only on terms acceptable to Lauren, which imposes on her a duty of good faith and fair dealing.
It is important to note that nothing in the stockholders agreement prevents Jeffrey from voting his shares of JLAJ to effectuate a dissolution of AETEA. The stockholders agreement is entirely silent on the issue of dissolution. Had the parties intended to prohibit the dissolution of AETEA, they could easily have included such a provision in the stockholders agreement. Having failed to do so, the court may not interpret the stockholders agreement as impliedly stating something that the parties have neglected to include (see Vermont Teddy Bear Co.). Moreover, a dissolution of AETEA is not a sale, transfer, conveyance, or other disposition[8] thereof. It is a termination of AETEA’s legal existence, which may be likened to the death of a natural person (Brookfield Asset Mgt. v AIG Fin. Prod. Corp., 2010 WL 3910590, 2010 US Dist LEXIS 29543 [SD NY, Sept. 29, 2010, No. 09 Civ 8285, Gardephe, J.]), and the event immediately preceding the liquidation or winding-up process (Black’s Law Dictionary [10th ed 2014], dissolution). Although the dissolution of AETEA would have resulted in a liquidation of its assets, the winding up would have been supervised by a receiver, and ultimately by the Delaware Court of Chancery, ensuring that everyone’s interests were protected.
The record reflects that Lauren was given notice of the Delaware proceeding and intervened therein. Lauren argued, as she does here, that Jeffrey’s dissolution of AETEA and subsequent petition for the appointment of a receiver were part of a plan to sell AETEA’s assets to himself, or to a company owned by or affiliated with him, in breach of article 3 of the *737 stockholders agreement. However, as previously discussed, article 3 of the stockholders agreement does not prohibit the sale of AETEA to Jeffrey or to a company owned by or affiliated with him. It merely provides that Lauren’s consent thereto is required, giving her an opportunity to object to such a sale. Her intervention in Delaware would have given her the same opportunity if the matter had proceeded to a winding up. Any bid submitted by Jeffrey in Delaware to acquire AETEA’s assets would have been evaluated by the receiver, along with Lauren’s objections, if any, and any other bids that would have been presented as part of the winding-up process. Such oversight would have ensured that the process was fair and that Lauren received the benefit of her bargain, i.e., that Jeffrey did not purchase AETEA in a “sweetheart” deal with no input from her. Lauren fails to consider that a sale of AETEA by the receiver may have been the best way to effectuate the intent of the stockholders agreement; that it may, in fact, have been beneficial to her; and that her refusal to allow the sale to go forward may have frustrated the parties’ settlement. By refusing to cooperate with the dissolution and winding up of AETEA, Lauren arguably may have deprived Jeffrey of the right to receive the benefits of their agreement in breach of the implied covenant of good faith and fair dealing (see Aventine Inv. Mgt. v Canadian Imperial Bank of Commerce, 265 AD2d 513, 514 [1999]). Accordingly, the court finds that Lauren has failed to establish that Jeffrey’s dissolution of AETEA and subsequent petition for a court-appointed receiver was either an actual or an anticipated breach of article 3 of the stockholders agreement.
The court also finds that Lauren has failed to establish that Jeffrey breached the other provisions of the stockholders agreement and stipulation of settlement that she contends were breached. Jeffrey did not enter into a contract or agreement that adversely affected repayment of the SCCC note. Jeffrey dissolved AETEA by filing a certificate of dissolution in the State of Delaware. A certificate of dissolution is not a contract or agreement, neither is a petition for dissolution. As previously discussed, the stockholders agreement clearly anticipates that AETEA will be sold. The stockholders agreement provides that, in an approved sale of the assets of AETEA, Lauren and Jeffrey will consent to the orderly dissolution and liquidation of JLAJ after the closing of the sale, at which point distribu *738 tions to her cease.[9] Thus, the parties never intended for Lauren to receive distributions in lieu of maintenance indefinitely, but only until AETEA is sold, JLAJ is dissolved, and Lauren and Jeffrey receive the value of their interests therein. Moreover, the record does not reflect that Lauren failed to receive any of the distributions to which she was entitled or that Jeffrey received any compensation after his salary was reduced to zero.
In view of the foregoing, the court finds that Lauren has not met her burden of establishing that Jeffrey defaulted on his obligations under either the stipulation of settlement or the stockholders agreement. Accordingly, Lauren is not entitled to recover attorney’s fees pursuant to article XIX (E) of the stipulation of settlement.
Business Corporation Law § 626 (e)
Business Corporation Law § 626 (e) provides as follows:
“If the action on behalf of the corporation was successful, in whole or in part, or if anything was received by the plaintiff or plaintiffs or a claimant or claimants as the result of a judgment, compromise or settlement of an action or claim, the court may award the plaintiff or plaintiffs, claimant or claimants, reasonable expenses, including reasonable attorney’s fees, and shall direct him or them to account to the corporation for the remainder of the proceeds so received by him or them. This paragraph shall not apply to any judgment rendered for the benefit of injured shareholders only and limited to a recovery of the loss or damage sustained by them.”
First, the court notes that the basis for an award of attorney’s fees in a shareholder’s derivative suit is to reimburse the plaintiff for expenses incurred on the corporation’s behalf (Glenn v Hoteltron Sys., 74 NY2d 386, 393 [1989]). Attorney’s fees are, therefore, paid by the corporation and not by the losing party (id.). Second, when the plaintiff has asserted both direct and derivative claims, as she does here, the plaintiff cannot recover legal fees for prosecuting her direct claims (Zelouf v Zelouf, 2013 NY Slip Op 32073[U] [Sup Ct, NY County 2013], citing Matter of A.G. Ship Maintenance Corp. v Lezak, *739 69 NY2d 1, 5 [1986]). Third, attorney’s fees must be sought in the action in which they are incurred and not in a subsequent action (Lupoli v Venus Labs., 287 AD2d 488, 489 [2001]). The plaintiff, therefore, cannot recover in this action for attorney’s fees incurred in the matrimonial action and in the Delaware dissolution proceeding.[10] Finally, whether and to what extent to award attorney’s fees is addressed to the discretion of the court in the exercise of its equitable powers (Seinfeld v Robinson, 246 AD2d 291, 300 [1998]).
As Lauren correctly contends, the creation of a common fund is no longer a prerequisite to an award of attorney’s fees pursuant to Business Corporation Law § 626 (e) {id. at 295). New York follows the substantial-benefit rule articulated in a series of federal cases which hold that attorney’s fees are recoverable, even in the absence of a common fund, when the plaintiff has achieved a “substantial benefit” accruing to the corporation and the other shareholders {id. at 294-295). The benefit need not be a tangible monetary benefit. Non-monetary benefits resulting from the plaintiff’s suit, such as promoting fair and informed corporate suffrage or deterring future misconduct by management, may support a fee award (Koppel v Wien, 743 F2d 129, 134-135 [2d Cir 1984]). Moreover, an award of attorney’s fees is not precluded because no judgment or consent decree was entered and the complaint was dismissed as moot (id. at 135). Fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought has been otherwise obtained {id.).
Lauren contends that this action conferred a substantial benefit on both JLAJ and SCCC because it caused Jeffrey to take corrective action. Lauren contends that, by abandoning his plan to dissolve AETEA and to liquidate its assets, JLAJ retained its sole source of income and its ability to repay the SCCC note. Lauren contends that, but for this action, Jeffrey would have sold AETEA’s assets to himself, terminated the distributions in lieu of maintenance to her, circumvented the reduction of his salary to zero, and impaired repayment of the SCCC note, all of which violate of the terms of the stipulation of settlement and stockholders agreement.
The term “substantial benefit” requires more than a mere technical act. It must actually accomplish a result that corrects *740 a wrong that would, inter alia, interfere with the protection of essential rights of the shareholders (Matter of Medical Action Indus. Inc. Shareholders Litig., 48 Misc 3d 544, 549 [Sup Ct, Suffolk County 2015], citing Mills v Electric Auto-Lite Co., 396 US 375, 396 [1970]). As previously noted, promoting fair and informed corporate suffrage or deterring future misconduct by management may support an award of attorney’s fees (Koppel v Wien). Similarly, awards of attorney’s fees have been based on protection of the corporate name and improved disclosure (3 Cox & Hazen, Treatise on the Law of Corporations § 15:20 [3d ed, Dec. 2016 Update]). In the cases in which attorney’s fees have been awarded, the petitioners have rendered a substantial service to the corporation and its shareholders. They involve “corporate therapeutics” that benefit the corporation and all of its shareholders {Mills), not just one class of shareholders (3 Cox & Hazen, Treatise on the Law of Corporations, supra). In such cases, an award of attorney’s fees is appropriate to avoid unjust enrichment. To allow others to obtain full benefit from the plaintiff’s efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff’s expense (Seinfield v Robinson at 295, citing Mills at 392).
Lauren’s contentions to the contrary notwithstanding, this action did not involve “corporate therapeutics,” and the only shareholder who benefitted therefrom is Lauren. As previously discussed, Lauren has failed to establish that Jeffrey breached terms of the stipulation of settlement and stockholders agreement. Those agreements did not prohibit AETEA’s dissolution and liquidation by a receiver appointed to supervise the process. In fact, they anticipated that AETEA would be sold and that JLAJ would be dissolved and liquidated shortly thereafter. Lauren was given notice of the Delaware proceeding and intervened therein. Her intervention gave her an opportunity to oppose any sale of AETEA to Jeffrey, ensuring that the process would be fair. Moreover, the plan of liquidation and dissolution adopted by Jeffrey provided for the payment of AETEA’s creditors, which included SCCC, in accordance with Delaware law {see Del Code Ann, tit 8, §§ 280-281). The court finds that, under these circumstances, this action did not result in a substantial benefit to JLAJ or SCCC and their stockholders. It merely delayed the anticipated sale of AETEA and allowed Lauren to continue to receive disbursements in lieu of maintenance. Accordingly, the court adheres to its prior *741 determination that Lauren is not entitled to attorney’s fees under Business Corporation Law § 626 (e).

. The remaining 20% is held by trusts for the Sardis’ two grown sons.

. The “operating entities” are defined as AETEA and the Allegiance Group, Inc.

. An “affiliate” is defined as anyone who, directly or indirectly, controls, is controlled by, or is under common control of a specified person. A “family member” is defined as an individual’s child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother- and father-in-law, son- and daughter-in-law, brother- and sister-in-law, and any other adoptive relationship.

. The “stockholders” are Jeffrey and Lauren.

. The distributions in lieu of maintenance are paid by JLAJ, of which Lauren is a 33% shareholder. AETEA is JLAJ’s only asset. Thus, a dissolution and liquidation of AETEA is, in effect, a dissolution and liquidation of JLAJ. Moreover, the stockholders agreement provides that, in an approved sale of the assets of AETEA, Lauren and Jeffrey will consent to the orderly dissolution and liquidation of JLAJ after the closing of the sale.

. Jeffrey, AETEA, and SCCC filed an answer to the complaint in this action on February 26, 2015.

. As previously noted, the “operating entities” are AETEA and Allegiance.

. “Disposition” is defined as the act of transferring something to another’s care or possession (Black’s Law Dictionary [10th ed 2014], disposition).

. As previously noted, the distributions to Lauren in lieu of maintenance are paid by JLAJ.

. This rule also applies to attorney’s fees sought under the stipulation of settlement.