Commercial Tenant Servs., Inc. v Building Serv. 32BJ Health Fund (2023 NY Slip Op 02969)

Commercial Tenant Servs., Inc. v Building Serv. 32BJ Health Fund

2023 NY Slip Op 02969

Decided on June 06, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 06, 2023

Before: Kapnick, J.P., Friedman, Gesmer, Moulton, Mendez, JJ. 

Index No. 653371/19 Appeal No. 17226-17227 Case No. 2022-01802, 2022-02495 

[*1]Commercial Tenant Services, Inc., Plaintiff-Appellant-Respondent,
v
Building Service 32BJ Health Fund, Defendant-Respondent-Appellant.

Law Offices of Kenneth L. Kutner, Garden City (Kenneth L. Kutner of counsel), for appellant-respondent.
Raab, Sturm & Ganchrow, LLP, New York (Ira A. Sturm of counsel), for respondent-appellant.

Judgment, Supreme Court, New York County (Arthur Engoron, J.), entered April 6, 2022, dismissing the complaint, and bringing up for review an order, same court and Justice, entered March 23, 2022, which granted defendant's motion for summary judgment dismissing the complaint and denied plaintiff's motion for summary judgment, unanimously reversed, on the law, without costs, the judgment vacated, defendant's motion denied, the complaint reinstated, plaintiff's motion granted as to liability, and the matter remanded for further proceedings. Appeal from the above order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Supreme Court correctly found that the confidentiality agreement between plaintiff and defendant's nonparty landlord did not preclude introduction of the evidence that plaintiff relied upon in its motion. The confidentiality agreement has a carve-out for information that plaintiff, a commercial lease auditing service, independently developed outside the audit that it performed on defendant's behalf, and the figures in the motion stemmed from information that plaintiff obtained during the course of discovery. To the extent, if any, the evidence on which plaintiff relies might fall within the scope of the confidentiality agreement, and to the extent, if any, defendant might have standing to enforce the rights and remedies of the landlord under the confidentiality agreement, defendant has waived such rights and remedies by failing to assert them until it submitted its opposition to plaintiff's motion for summary judgment.
The parties entered into a written agreement, dated June 26, 2013 (the 2013 agreement), under which defendant retained plaintiff, on an "exclusive" basis, to conduct an audit to determine whether defendant was being overcharged by the landlord of the premises at which defendant maintained its offices. As here relevant, the 2013 agreement provides that plaintiff is entitled to receive a commission upon "Refunds" that defendant receives for years audited by plaintiff and for a specified period of time thereafter. Paragraph 2 of the 2013 agreement defines the term "Refunds" to include, inter alia, "compromise or forgiveness of an obligation arising under any prior lease, the current lease or any renegotiated leases (including concessions and reductions in bills or other benefits resulting from a transaction related to the current lease or renegotiated lease or sublease, including assignment of a lease), or other consideration, financial, transactional or otherwise" (emphasis added).
Paragraph 5 of the 2013 agreement further provides: "[Defendant] agrees that the fees payable to [plaintiff] under this Agreement will not be reduced should [defendant] enter into any agreement with the landlord or other person or entity which would otherwise reduce or cause a reduction of the fees that would be payable to [plaintiff]" (emphasis added).
The lease for defendant's premises refers to an option [*2]agreement between defendant and the landlord, under which defendant had an option to purchase the premises it leased in the event the building were converted to a condominium. While plaintiff was conducting its audit, such a conversion was contemplated, and defendant and the landlord were negotiating the terms of defendant's exercise of its option. On or about June 30, 2016, the closing of defendant's purchase of its premises pursuant to the option took place. It is undisputed that, in connection with the purchase, the landlord, which would continue to manage the condominium, agreed to reduce its management fee, changed the base year for calculation of expenses from 2013 to 2014, and made certain other changes in the calculation of expenses charged to defendant that resulted in savings to defendant. Thereafter, defendant discharged plaintiff.
In this action, plaintiff claims that the savings in management fees and other expenses that defendant realized from its purchase of its premises constitute "Refunds" within the meaning of the 2013 agreement and that, as such, it is entitled to recover from defendant a commission on those savings. Defendant denies having any liability to plaintiff, taking the position that the 2013 agreement entitles plaintiff to a commission only on rent-related savings or recoupments. Supreme Court agreed with defendant, granted its motion for summary judgment dismissing the complaint and denied plaintiff's motion for summary judgment.
Upon plaintiff's appeal, we reverse and vacate the judgment for defendant and grant plaintiff summary judgment as to liability. The 2013 agreement's definition of "Refunds" expressly includes within the scope of that term "concessions and reductions in bills or other benefits resulting from a transaction related to the current lease." Inasmuch as the option pursuant to which defendant purchased its premises was referenced in the lease in effect when plaintiff was retained, that purchase was plainly "a transaction related to the [then] current lease." Accordingly, the contractual term "Refunds" unambiguously includes savings realized through the purchase of the leased premises. In contending that only "rent-related" savings should qualify as "Refunds," defendant would have us insert into the 2013 agreement a term not placed there by the parties, thereby improperly "mak[ing] a new contract for the parties under the guise of interpreting the writing" (Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001] [internal quotation marks omitted]). This we decline to do. This conclusion is reinforced by paragraph 5 of the 2013 agreement, under which, as previously noted, defendant agreed that fees otherwise payable to plaintiff "will not be reduced should [defendant] enter into any agreement with the landlord or other person or entity" (emphasis added). Nothing in the agreement limits the phrase "any agreement" to agreements affording defendant benefits as a tenant under a continuing lease. Because [*3]the 2013 agreement is unambiguous in this regard, defendant's argument that the contract should be construed against plaintiff, which drafted it, is unavailing.
Moreover, because of the "exclusive" nature of plaintiff's retention, plaintiff is entitled to a commission based on any savings or recoupments realized by defendant during the relevant period that constitute a "Refund[]" within the scope of the 2013 agreement's definition of that term, whether or not plaintiff procured or even identified those benefits (see Commercial Tenant Servs., Inc. v Northern Leasing Sys., Inc., 131 AD3d 895, 896 [1st Dept 2015] ["Due to the exclusivity provision, plaintiff did not have to prove that it was the procuring cause of the porters' wage savings, i.e., that defendant did not know about the overcharge before plaintiff told defendant about it"]).
Finally, while the foregoing establishes plaintiff's entitlement to a commission on any savings defendant realized as a result of its purchase of the condominium during the period specified in paragraph 4 of the 2013 agreement, we cannot determine the amount of those savings, and of the resulting commission, based on the existing record. Accordingly, the matter is remanded for further proceedings to determine the amount of the recovery to which plaintiff is entitled.
We have considered and rejected defendant's remaining arguments. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 6, 2023