O'Connor v Society Pass Inc. (2024 NY Slip Op 05141)

O'Connor v Society Pass Inc.

2024 NY Slip Op 05141

Decided on October 17, 2024

Appellate Division, First Department

Oing, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 17, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Jeffrey K. Oing
David Friedman Saliann Scarpulla Martin Shulman John R. Higgitt

Index No. 656938/19 Appeal No. 2494 Case No. 2023-03020 

[*1]Thomas O'Connor, Plaintiff-Respondent, CVO Advisors PTE, LTD., Plaintiff,
v
Society Pass Incorporated, Defendant-Appellant.

Defendant appeals from an order of the Supreme Court, New York County (Joel M. Cohen, J.), entered May 19, 2023, which, insofar as appealed from as limited by the briefs, granted plaintiff's motion for partial summary judgment on the issue of liability on his first cause of action for breach of contract to the extent that the order determined that plaintiff validly exercised his rights to purchase 1,148 shares of defendant Society Pass Incorporated.

Sichenzia Ross Ference Carmel LLP, New York (Michael D. Nacht and Christopher P. Milazzo of counsel), for appellant.
Law Office of Ethan A. Brecher, New York (Ethan A. Brecher of counsel), for respondent.

Oing, J. 

Defendant Society Pass Incorporated (SPI) asks us to find that its Employment Agreement and Common Stock Purchase Warrant with plaintiff Thomas O'Connor are in fact two pieces of a single contract, thereby supporting SPI's decision to dishonor the Warrant because plaintiff allegedly breached his covenants under the Employment Agreement. At stake is plaintiff's claim of an entitlement to nearly $10 million. The dispute brings to mind an oft-uttered phrase in the commercial world: "a deal is a deal."
SPI, a Nevada Corporation registered to conduct business in New York, owns and operates a universal data-driven loyalty program. SPI is building the next generation of loyalty and data-focused marketing platforms in Southeast Asia. It offers a loyalty and rewards program using its artificial intelligence-driven data analytics to drive customer engagement by transforming how consumers and merchants interact with one another. This innovative technology is designed to ease transactions for consumers, thereby engendering permanent customer loyalty, while also benefiting merchants by generating revenue and replacing cash discounting.
This story began in November 2018 when SPI hired plaintiff to be its chief marketing officer pursuant to the Employment Agreement, which was executed by plaintiff and Dennis Nguyen, SPI's founder, chairman and chief executive officer. The relevant sections of the Employment Agreement are section 1, plaintiff's employment terms and conditions; section 3, the terms governing plaintiff's compensation and benefits; section 5, covenants concerning confidential information and other matters; section 10, the merger clause; and section 12, the no-waiver clause.
In particular, section 3(b) sets forth the equity plaintiff would be entitled to receive upon satisfying certain conditions:
"As consideration for the Executive's employment, Executive shall receive a stock grant equal to 10% of the Company's shares of common stock at the close of the Series B round of financing, which the Parties expect to be on or around November 30, 2018 (the "Shares"), which shall vest and be issued quarterly in equal amounts during the term of four (4) years (i.e. 1/16th of the number of the Shares each) following the Effective Date. Executive acknowledges that Executive must be an employee [*2]of the Company under this Agreement, or another employment agreement, in order to receive the Shares scheduled to be issued herein. Both the Company and the Executive shall draft a list of mutually agreeable Key Performance Indicators ("KPIs") by 31 December 2019, which govern the issuance of the Shares. The list of KPIs shall be treated as an addendum to this Agreement."
Despite the contractual requirement that the parties draft a list of mutually agreeable KPIs, the parties did not come to an agreement concerning the list of KPIs, with Nguyen alleging that plaintiff refused to agree to any of the list of KPIs that Nguyen proposed, and that plaintiff never proposed a list of his own.
Further, section 5 provides that "[a]ll payments and benefits to [plaintiff] under the Agreement shall be subject to [his] compliance with the provisions of this Section 5." The section 5 covenants required plaintiff to safeguard SPI's confidential information, to not engage in the solicitation of SPI's clients and executives for a period of time, and to not disparage SPI.
On January 31, 2019, approximately two months after the Employment Agreement was executed, and about the time the Series B round of financing closed, SPI presented plaintiff with the Warrant. As relevant to this appeal, the Warrant states:
"THIS CERTIFIES that, for value received, Thomas O'Connor (the 'Holder') is entitled, upon the terms and subject to the conditions hereinafter set forth, at any time on or after the date hereof and on or prior to 8:00 p.m. New York City Time on the date that is one (1) year after the date hereof (the 'Expiration Date'), but not thereafter, to subscribe for and purchase from [SPI] . . . (the 'Company') 1,721 . . . shares of [SPI's] Common Stock (the 'Warrant Shares') at an exercise price of $0.0001 per share (the 'Exercise Price') subject to the following terms and conditions.
. . .
Exercise of Warrant
The Holder and the Company signed an employment contract dated 21 November 2018 (attached as Appendix 1). The Company and the Holder agree that 50% (fifty percent) of the Warrant Shares equating to 861 . . . common shares shall be exercised immediately upon the signing of this Common Stock Purchase Warrant. The remaining 860 common shares of this Common Stock Purchase Warrant shall be vested in amounts equivalent to 1/12 of the shares per month over the ensuing months. In case if Holder voluntarily resigns from his employment with the Company, any amount of unexercised Warrants during this twelve month period, shall become null and void and the Holder will not be allowed to exercise said remaining Warrants."
Thus, the Warrant, which referenced and had appended to it the Employment Agreement, provided plaintiff with the right to an immediate redemption of 861 shares. As to the remaining 860 shares, redemption was subject to a 12-month vesting schedule, and if plaintiff voluntarily resigns, any amount of unexercised warrants during this [*3]period shall be forfeited. In addition to signing it, Nguyen also, along with plaintiff, initialed every page of the Warrant.
The Warrant contained an entirely different manner in which plaintiff was granted equity, as compared to what was contemplated by the Employment Agreement. Under the Employment Agreement, plaintiff was entitled to a 10% grant of company stock that would vest and be issued quarterly over four years, the issuance of which would be governed by a mutually agreeable list of KPIs to be drafted by the parties.
By contrast, the Warrant, among other things, contained three material changes in how equity was granted to plaintiff. First, while the Employment Agreement required a list of KPIs to be drafted by both parties as a condition of equity being issued, the Warrant contained no KPI requirement. Second, the Warrant provided that 861 shares of SPI stock were to be "exercised immediately" upon the signing of the Warrant, and that the remaining 860 shares provided under the Warrant would vest in amounts equivalent to 1/12 per month (i.e. 71.66 shares) over the ensuing 12-month period.Thus, unlike the extended vesting period under the Employment Agreement, where shares vested in equal quarterly amounts over four years, the Warrant provided that 861 shares would vest immediately, with the balance of 860 shares vesting in equal monthly increments over 12 months. Third, the Employment Agreement required that plaintiff remain employed by SPI to continue vesting in the shares issued under section 3(b). In contrast, pursuant to the Warrant, plaintiff would continue to vest monthly even if he no longer worked at SPI, provided that he did not "voluntarily resign[]" from SPI.
On the same day the Warrant was issued, plaintiff executed and Nguyen countersigned a "Notice of Exercise" for 861 shares, which was appended to the Warrant. On August 20, 2019, plaintiff provided SPI again with the January 31, 2019 notice of exercise for the 861 shares, as well as a new notice of exercise dated August 1, 2019 for 430 shares. On January 31, 2020, plaintiff provided SPI with additional notices of exercise, one dated November 1, 2019 for 215 shares and one dated January 31, 2020 for 215 shares. Thus, plaintiff executed notices of exercise for all 1,721 shares provided for in the Warrant, and provided SPI with funds for what he thought was the price for the shares. There is no dispute that plaintiff did not receive any of the 1,721 shares.
In the meantime, during the summer of 2019, the relationship between plaintiff and SPI began to deteriorate. Nguyen alleges that plaintiff committed malcontent insubordination by engaging in unauthorized meetings with investors, disparaging him and members of SPI's management team, taking unauthorized and extended vacations, and neglecting his duties and obligations, all in contravention of the section 5 covenants. On September 12, 2019, SPI terminated plaintiff, ostensibly for breach of the Employment Agreement, specifically [*4]focusing on the covenants.
On January 6, 2020, plaintiff commenced this action alleging, among other things, breach of contract based on SPI's failure to deliver 1,721 shares of SPI's common stock pursuant to the Warrant, and sought damages in an amount to be determined at trial, but not less than $9.918 million. On January 27, 2020, SPI answered and counterclaimed that it was plaintiff who breached the Employment Agreement by failing to develop and agree to a list of KPIs, and by committing malcontent insubordination. Shortly thereafter, on February 10, 2020, SPI's counsel informed plaintiff via letter correspondence and email that while SPI had received the November 1, 2019 and January 31, 2020 notices of exercise, SPI's position was that the "Warrant is no longer valid and [plaintiff] is no longer entitled to exercise any rights thereunder." Thus, SPI rejected and returned the notices and the accompanying checks. Counsel's communication made no mention of the January 31, 2019 notice of exercise for 861 shares or the August 1, 2019 notice of exercise for 430 shares.
Plaintiff moved for partial summary judgment on his first cause of action for breach of the Warrant, arguing that he was entitled to a judgment of over $9 million for the 1,721 shares of SPI's common stock that he had redeemed pursuant to the four notices of exercise at $5,763 per share.[FN1] SPI opposed, essentially arguing that plaintiff failed to establish prima facie his entitlement to summary relief.
Relevant to this appeal, Supreme Court granted the motion to the extent of finding that the Warrant superseded the Employment Agreement on the issue of plaintiff's entitlement to the SPI shares. The court then determined that plaintiff had validly exercised his right to purchase 1,148 shares of SPI stock pursuant to the Warrant. The court arrived at this figure based on the language in the Warrant stating that 861 shares vested immediately, and that the remaining 860 shares would vest at a rate of 1/12 of those shares per month over the course of the 12-month term of the Warrant. Thus, Supreme Court held that the 861 shares vested on January 31, 2019, when the Warrant was issued, and that another 71.6 shares vested each month thereafter. Because there were no allegations of insubordination prior to June 2019, the court determined that plaintiff was entitled to the shares for the months of February, March, April, and May 2019, equaling 287 shares, which, in addition to the 861 shares, totaled 1,148 shares. It also determined that issues of fact existed as to the valuation because the options were exercisable at a time when the shares were not marketable, thus requiring analysis as to the appropriate measure of damages. This appeal ensued.
[FN2]
On appeal, SPI continues to maintain that the Employment Agreement and the Warrant are integrated documents. Thus, SPI contends that plaintiff's failure to establish prima facie his compliance with the terms of the Employment Agreement, particularly [*5]the section 5 covenants, precludes him from obtaining summary judgment on his claim that he is entitled to receive the shares provided in the Warrant. The reason for SPI's argument is obvious. Unlike the Employment Agreement, the Warrant does not have these kinds of covenants, or any covenants favorable to SPI for that matter. There is no condition for the redemption of the 861 shares, which vested immediately. As to the remaining 860 shares, the only condition is that if plaintiff voluntarily resigns any amount of unexercised warrants during the 12-month period shall be forfeited. Thus, without integrating the Warrant and the Employment Agreement so as to incorporate the covenants and employment terms into the Warrant, SPI would have no basis to support its argument that plaintiff failed to establish his prima facie entitlement to summary judgment.
"[O]n a motion for summary judgment, the construction of an unambiguous contract is a question of law for the court to pass on" (Maysek & Moran v Warburg & Co., 284 AD2d 203, 204 [1st Dept 2001] [internal quotation marks omitted]). "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (Reiss v Financial Performance Corp., 97 NY2d 195, 198 [2001] [internal quotation marks omitted]). Stock warrants are enforceable contracts "entitling the holder to purchase a specified number of shares of stock for a specific price during a designated time period" (id.). Further, stock warrants that contain "all the material provisions necessary to make them enforceable contracts" will be enforced according to their terms and thus, the rights thereunder may be properly resolved on summary judgment (id.). The Warrant satisfies all of the Reiss requirements because it explicitly provides that 1,721 shares, at $0.0001 per share, would vest according to a set schedule — specifically, 861 shares immediately, and 860 shares over a 12-month period, until 8:00 p.m. on January 31, 2020. Under these circumstances, the Warrant is a stand-alone agreement, valid and enforceable on its own terms, which renders SPI's argument that the equity grant in the Employment Agreement is an unenforceable agreement to agree not sustainable.
However, SPI correctly points out that Reiss does not preclude integration of a stock warrant into another agreement. SPI argues that appending the Employment Agreement to the Warrant demonstrates integration of the two agreements, or at a minimum raises a factual issue, relying on Starr Indem. & Lia. Co. v Brightstar Corp. (388 F Supp 3d 304 [SD NY 2019]). The argument is unavailing because it is based on a misreading of Starr Indemnity. That decision held that, to incorporate a document into another agreement, "[n]o particular mode of reference is necessary for that purpose; any language which indicates the intent that the two shall make one instrument, or a physical annexing of the one to the other, in a manner or under circumstances [*6]showing clearly such intent, is sufficient" (id. at 341 [internal quotation marks omitted]). SPI overlooks the element of intent in its argument, basing its position solely on the fact that the Employment Agreement is attached to the Warrant. The mere fact that the Employment Agreement is appended to the Warrant is insufficient, standing alone, to demonstrate incorporation. Absent from the Warrant is any contractual language indicating a clear and unequivocal intent to incorporate and integrate the Employment Agreement. Instead, the Warrant simply states without qualification that plaintiff and SPI had entered into the annexed Employment Agreement, and fails to set forth any language providing for integration of the two agreements (see Rudman v Cowles Communications, 30 NY2d 1, 13 [1972] ["In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances"]).
As to SPI's contention that the Warrant lacks consideration to sustain its validity, that assertion is unavailing. Lack of consideration is a viable defense because one contracting party cannot be "accountable for anything which has not been received" (Fopeco, Inc. v General Coatings Technologies, 107 AD2d 609, 610 [1st Dept 1985] [internal quotation marks omitted]). In addition to the Warrant stating that it was given "for value received," which is presumptively valid for consideration purposes (see P.D.J. Corp. v Bansh Props., 29 AD2d 927, 928 [1st Dept 1968], affd 23 NY2d 971 [1969]), consideration for the Warrant is supported by record evidence that SPI overlooks — that SPI had received "value" in the form of plaintiff's performance of his employment responsibilities under section 1 of the Employment Agreement (see id.; see also Torvec, Inc. v CXO on GO of Del., LLC, 38 AD3d 1175 [4th Dept 2007] [agreement provided that warrant to purchase stock was in exchange for the provision of advisory services]; General Obligations Law § 5-1105 [written promise expressing past consideration is sufficient consideration]).
We turn to SPI's argument that the Warrant, whether stand-alone or not, did not supersede the Employment Agreement, and thus did not extinguish plaintiff's obligations to comply with the conditions of employment, in particular section 5, which provides that plaintiff's entitlement to "payments and benefits" shall be subject to his compliance with the section. In pursuing this argument, SPI fails to recognize that section 10 provides for modification of the Employment Agreement by a written agreement signed by plaintiff and SPI. The Warrant is a writing signed by both parties that specifically changed the terms under which SPI granted equity to plaintiff. Nguyen signed the Warrant, and initialed each page, except the pages that he had signed. Plaintiff also initialed every page. Nguyen and plaintiff both signed the January 31, 2019 notice of exercise appended to the Warrant. Under the clear terms of the Employment [*7]Agreement, the Warrant cannot be deemed to have superseded that agreement. Instead, the Warrant can be viewed as a modification of the equity provision set forth in section 3(b) of the Employment Agreement, which notably eliminated the KPI requirement and provided a new equity vesting and distribution schedule. The question remaining is whether, after such modification, plaintiff's receipt of "payments and benefits" remains conditioned on his compliance with the section 5 covenants, thus making his compliance a component of the prima facie showing he must make to obtain summary relief. The answer is no.
The Warrant only implicates plaintiff's equity benefits. In direct contravention of section 5's provision that "[a]ll payments and benefits" shall be subject to plaintiff's compliance with the section, the clear language of the Warrant provides for the immediate vesting and distribution of 861 shares, without any attendant conditions. Further, the only limitation placed on the vesting of the remaining shares over the following 12 months was that plaintiff not voluntarily resign from SPI. Thus, this modified vesting and distribution schedule precludes application of the section 5 covenants against plaintiff's claims of equity. The Warrant, however, does not reach nonequity based claims such that plaintiff's compliance would be necessary in order to receive those "payments and benefits" under the Employment Agreement.
Lastly, SPI argues that section 12's no-waiver clause is still valid and enforceable, and that it has not waived plaintiff's obligation to comply with his section 5 covenants. Regardless, SPI takes the position that at a minimum a factual issue exists concerning the waiver issue warranting denial of plaintiff's summary judgment motion. This argument is unavailing. The Warrant is a stand-alone agreement unmoored from plaintiff's employment covenants under the Employment Agreement so that it is beyond the reach of the no-waiver clause.[FN3]
Thus, we find that the Warrant is a separate contract, enforceable in its own right, and that plaintiff is entitled to at least 1,148 shares (see Crede CG III, Ltd. v Tanzanian Gold Corp., 180 AD3d 409, 410 [1st Dept 2020]).[FN4] The price per share as well as plaintiff's entitlement to shares from June 2019 through January 2020, which, although not subject to the section 5 covenants, may be vulnerable to the independent faithless servant defense based on plaintiff's purported insubordination that occurred during that period, do not lend themselves to summary disposition because issues of fact exist concerning how to determine the share price and plaintiff's alleged insubordination .
Accordingly, the order of the Supreme Court, New York County (Joel M. Cohen, J.), entered May 19, 2023, which, insofar as appealed from as limited by the briefs, granted plaintiff's motion for partial summary judgment on the issue of liability on his first cause of action for breach of contract to the extent that he validly exercised [*8]his rights to purchase 1,148 shares of defendant Society Pass Incorporated should be affirmed, with costs.
Order, Supreme Court, New York County (Joel M. Cohen, J.), entered May 19, 2023, affirmed, with costs.
Opinion by Oing, J. All concur.
Oing, J.P., Friedman, Scarpulla, Shulman, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 17, 2024

Footnotes

Footnote 1: Plaintiff submitted a subscription agreement that SPI had executed with another entity in August 2019 listing the price per share as $5,763. This same subscription agreement listed plaintiff as a Common Shareholder holding Certificate Number 19, with 861 shares registered under his name. Plaintiff also submitted email correspondence dated September 4, 2019, between Nguyen and another SPI employee, with a copy of a similar warrant stating that the holder was awarded 130 shares of SPI common stock with a value of $5,763 per share.
Footnote 2: SPI does not challenge the number of shares awarded, but instead argues that plaintiff was not entitled to any shares under the Warrant. Plaintiff's cross-appeal does not contest the number of shares awarded. Further, plaintiff has abandoned his cross-appeal concerning Supreme Court's determination that a factual issue exists as to the valuation of SPI's shares (see Westman Realty Co., LLC v Nettles, 220 AD3d 557 [1st Dept 2023] [appellate issue abandoned because no appellate argument challenging Supreme Court's determination was made]).

Footnote 3: We further note that section 12's no-waiver clause is inapplicable given our finding that the Warrant can also be viewed as a modification.

Footnote 4: We need not consider SPI's August 2019 capitalization table to establish plaintiff's entitled shares in light of our determination and in the absence of a cross-appeal on this issue.